NEW-YORK,
May, 1811.

PHELPS
v
JOHNSON.

had acted upon it, there should have been an endorse-ment by the sheriff.

———◦◦◦———

Where *A. & B.* gave a sealed note to *C.* and *A.* afterwards gave a bond and mortgage to *C.* for the amount due on the note, and *C.* covenant-ed to procure, and cancel the note, it was held, that, though the bond and mortgage were not an extinguishment of the note, yet the covenant made with *A.* was for the benefit of *A. & B.* and a covenant not to sue, which amounted to a release of the note.

PHELPS, Administrator of PHELPS, *against* I. and O. JOHNSON.

THIS was an action of debt, to recover the amount of three sealed notes, dated the 14th of *February,* 1798,

and payable before the 28th *June*, 1806. The defend-
ants pleaded ; 1. *Non est factum;* 2. *Payment;* 3. A re-
lease on the 28th *June*, 1806.

The cause was tried before the *Chief Justice*, at the
Ontario circuit, the 25th of *June*, 1810.

At the trial, the plaintiff proved the execution of the
notes, and that they were assigned to *Henry Remsen*, on
the 3d *May*, 1805, and that this suit was brought for his
benefit. The defendant then offered in evidence an
agreement, under seal, dated the 28th *June*, 1806, be-
tween *Oliver Phelps*, the intestate, and *Isaac Johnson*,
one of the defendants, which stated, that whereas the said
*Phelps* had that day conveyed to the said *Johnson* part
of a lot of land, No. 35. in township No. 9. in the 5th
range of townships, in *Ontario* county, being the east
half of the said lot, supposed to contain 185 acres and
three fourths; and if on an accurate survey the said land
should fall short of the said quantity, the said *Phelps*
agreed to refund to the said *Johnson*, for every acre so
deficient, the sum of 5 dollars, with interest from the
date; and that in case it exceeded the said quantity, the
said *Johnson* agreed to pay to the said *Phelps*, 5 dollars
for every acre of such excess, with interest, &c.; and
the said *Johnson* further agreed to procure and give up
to the said *Phelps*, the articles of agreement executed be-
tween the said *Phelps*, and the said *Isaac Johnson* and
*Otis Johnson*, for the said land ; and the said *Phelps*,
the intestate, further agreed to procure and cancel the
notes given to him by the said *Isaac* and *Otis Johnson*,
for the original purchase of the said land, he having
received the said *Isaac Johnson's* bond and mortgage for
the balance due on the said notes. The plaintiff's coun-
sel objected to the admission of this agreement, but the
objection was overruled, and the paper read in evi-
dence.

The defendants then proved, that on the day when the
said agreement was executed, *Isaac Johnson* came to

the intestate, *Phelps*, for the purpose of settling certain. notes given by the defendants to *Phelps* for land; and that *Phelps* told *Isaac Johnson* that the notes were not in his possession, but in the hands of some one of his attorneys, for the purpose of writing to the obligors; that the intestate produced a statement of the notes, and of the balance calculated to be due on them, and accepted the bond and mortgage executed by *Isaac Johnson*, for the balance.

On this evidence, a verdict was taken for the plaintiff, subject to the opinion of the court, on a case made, containing the above facts.

*Cady*, for the plaintiff. The agreement was no evidence of payment. The acceptance of a bond in satisfaction, cannot be pleaded to an action of debt on another bond;* nor was it admissible, as evidence of accord and satisfaction, under the notice annexed to the plea.

Again, it was not a release. I am aware of the case of *Cuyler* v. *Cuyler*,† in this court; but that is the first case in which a covenant not to sue has been allowed to be a release, when not made between the very same parties. A covenant to sue, is construed a release, merely to prevent a circuity of action; and on the same principle set-offs are allowed; but they must be between the same parties; for if other parties are introduced, how can it be supposed that it was intended as a release?‡ If the covenant were broken, the defendants could not maintain an action against the plaintiff to recover the sum, which he may recover in this action.

That the intestate and *Isaac Johnson* never considered this as an actual release of the notes, is apparent from the face of the instrument. For if it was really so intended, why not take a release? It is, at best, but an agreement for a release, or a covenant to do an act in future which should amount to a release. A distinction has

*\* Cro. Car. 85, 86 Bac. Abr. Release, A. 2.*

*† 2 Johns. Rep. 186.*

*‡ T. Raym. Rep. 393.*

been taken between a covenant for a lease, and a
lease.*

Again, the covenants between the intestate and *Isaac
Johnson*, were mutual and dependent; the intestate was
not bound to perform his covenant, until *Isaac Johnson*
should perform his covenant to procure and give up the
contract; and as *Isaac Johnson* did not do this within a
reasonable time, the intestate's covenant must be consi-
dered as discharged.†

The court will take notice of and protect the rights of
assignees.‡ There was notice of the transfer of the
notes, or at least sufficient to put the party on the inqui-
ry.§ Notice is required for the protection of the as-
signee. There is no pretence that these notes were ever
actually paid; and are the rights of the assignee to be
sacrificed in order to protect *Isaac Johnson?* If *Isaac
Johnson* had been sued on his bond, he might, after pay-
ing the notes, have pleaded that the bond was given for
the notes, and that the notes had been paid; and a judg-
ment in this suit, against the defendants, will furnish
him with a complete defence, in case he should be sued
on the bond given to the intestate. *Otis Johnson* has no
equity whatever on which to insist on being exonerated
from the payment of these notes; and if the defence
fails as it respects him, it must fail as to both defend-
ants.

*Sedgwick*, contra. *Otis Johnson* can derive no bene-
fit from the contract for the land; for the deed of the
land has been given to *Isaac Johnson*. The plaintiff, as
assignee, has really no equity; for he ought to have given
immediate notice to the defendants, who are prejudiced
by his negligence. Until notice, all acts and payments
by the party are good.¶ The circumstance of the notes
not being in the hands of *Phelps*, was not enough to put
the party on inquiry; for the intestate induced *Isaac*

NEW-YORK,
May, 1811.

PHELPS
v.
JOHNSON.

* 5 *Johns. Rep.*
74. 77.

† 1 *Saunders*,
320. c. *note.*

‡ 3 *Johns. Rep.*
426.

§ 1 *Johns. Cas.*
53.

¶ 2 *Johns. Cas.*
258. 260.

*Johnson* to believe, that though the notes were not in his actual possession, they were within his power and control, as being merely lodged with his attorney. Had the plaintiff given notice to the defendants, they would have been on their guard.

A covenant not to sue is construed to operate as a release, because it is the evident intent of the party, by such a covenant, that his right of action should be released. A covenant to procure and cancel the notes, is a covenant to cancel them, which, according to the plain intent and meaning of the parties, is a release.*

In *Drake* v. *Mitchell*,† Lord *Ellenborough* said, that if parties so agreed, one debt or security might be a satisfaction of another.

The covenant with *Isaac Johnson* was for the benefit of both defendants; and the interest of *Otis Johnson* is entitled to the notice and protection of the court, as much as any equitable interest.

*Per Curiam.* The covenant by the intestate with one of the defendants, to procure and cancel the notes given by both the defendants, was a covenant enuring to the benefit of both; and though *Otis Johnson* could not maintain a suit upon it in his own name, seeing it was not a parol promise, but by specialty, yet he had undoubtedly an equitable interest in it, and would be entitled to use the name of *Isaac Johnson*, as a trustee for his interest in the covenant. The validity of such an equitable interest was recognised so long ago as the case of *Offly* v. *Warde;* (1 *Lev.* 235.) and since that time, the courts of law have regarded, and will now give effect to the interest of a *cestuy que trust*, in a covenant or other specialty. Taking the bond and mortgage of *Isaac Johnson* was not an extinguishment of the sealed notes; (1 *Anst.* 111.) but the covenant made with *Isaac Johnson* for the benefit of him and *Otis Johnson*, that the intestate would " procure and cancel the notes," amounted to a release.

* 2 *Saund.* 48. n. 1. See 8 *Term Rep.* 168.
† 3 *East*, 251.

This construction is requisite to avoid circuity of action; for if, instead of cancelling the notes, the intestate or his representatives should put them in suit, and should recover, the defendants would be entitled to recover back, under this covenant, precisely the same damages which they might sustain by reason of the suit. It is, therefore, equally just and reasonable that the covenant should be construed according to its real force and effect. The case in this court of *Cuyler* v. *Cuyler*, (2 *Johns. Rep.* 186.) and the general language of the books, establishes the same doctrine.

The defendants are, therefore, entitled to judgment.

Judgment for the defendants.