THE CASE WAGON COMPANY, Respondent, vs. WOLFENDEN, imp., Appellant.

*April 6 — April 28, 1885.*

*Covenant to save harmless from obligation: Release: Consideration: Escrow: Delivery: Promissory notes: Purchase with notice of equities.*

In order that the business of an insolvent corporation might be continued it was arranged that F. and S. should purchase its property, pay off mortgages thereon, assume all foreign indebtedness of the corporation, including certain notes given to one K., and indemnify domestic creditors and sureties against any liability by reason of their indorsement or suretyship for the corporation, provided such domestic creditors would assign to F. and S. their claims against the corporation. In pursuance of this arrangement F. and S. executed to the defendants (domestic creditors) a bond conditioned that they would save the defendants harmless from all obligation and all actions on the said notes to K. which had been signed or indorsed by the defendants with the corporation. At the same time F. and S. executed an agreement to release the indorsers and guarantors (including the defendants) of the notes secured by the mortgages on the property of the corporation, such release to take effect as soon as such property should be purchased by F. and S. or by any one for their benefit or on their behalf. It

was agreed that the obligees in the bond should keep the matter secret in order that F. and S. might effect a compromise of the notes to K.   The bond was left in the hands of a third person to await the consummation of the agreement by the purchase of the property.   Such purchase was soon after made, but in the names of F. and his brother and of the wife of S. (S. acting as her agent), and they also purchased the notes to K., then past due, at one half of their face value.   Subsequently the wife of S. sold her interest to F. and his brother and two others, who thereupon organized the plaintiff corporation.   In a suit by such corporation against the defendants as sureties or indorsers of the notes to K., *held:*

(1) The purchase of such notes was in pursuance of the arrangement under which the bond was given to the defendants, and the wife of S. and the plaintiff corporation took them subject to the equities of the parties to that arrangement.

(2) The bond was not without consideration, the defendants having been held off by it and by the arrangement from any attempt to secure their claims against the insolvent corporation or to compromise on their own behalf the notes to K., and having permitted F. and S. to obtain all the benefits of the arrangement.   The fact that, though ready to do so, they had never formally assigned their claims against the insolvent corporation, is immaterial.

(3) The bond and agreement executed by F. and S., construed together, and the understanding of the parties, show that the bond was to take effect when the property was purchased, and though it was left in escrow the defendants were entitled to it upon such purchase being made.

(4) The bond operated as a release of all liability of the defendants on the notes to K. as soon as those notes were purchased under the arrangement.

APPEAL from the Circuit Court for *Juneau* County.

The case is sufficiently stated in the opinion.   The defendant *Wolfenden* appealed from a judgment in favor of the plaintiff for the amount due upon the notes.

For the appellant there was a brief by *Pinney & Sanborn,* and oral argument by *Mr. Pinney.*   Besides the cases cited in the opinion, they cited, to the point that the detriment or inconvenience to the defendants was a sufficient consideration for the bond: *Laythoarp v. Bryant,* 3 Scott, 250; *Hawes v. Smith,* 2 Lev. 122; *Sturlyn v. Albany,* Cro. Eliz. 67; *Wil-*

kinson v. Oliveira, 1 Bing. N. C. 490; Brooks v. Ball, 18 Johns. 337; Austyn v. McLure, 4 Dall. 226.

For the respondent the cause was submitted on the brief of J. W. Lusk.

ORTON, J. The corporation known as the "Wonewoc Manufacturing Company" had given its notes for over $3,000 to one Kimbark, and the defendant and others had signed the same as sureties. Said company had given chattel mortgages to certain banks to secure certain indebtedness thereto. It had also made an assignment for the benefit of its creditors. It was indebted to the defendant and several other citizens of Wonewoc in various sums, and several of them had been sureties upon its paper. It was deemed of great interest to their town that said manufacturing establishment should be maintained and kept in operation. The banks had taken possession of its personal property under said mortgages. Several of said domestic creditors and sureties were willing to surrender or assign their claims against the company if they could be relieved from their liability as such sureties, and have the property purchased by some one, and the establishment continued. This was the condition of affairs when Reuben Fisk, also a surety of said company, and E. Clarence Sage, citizens of said town, made a proposition to this defendant and others of said domestic creditors and sureties, and to the corporation, to purchase or buy in the property of said corporation, subject, of course, to said mortgages, which they were to pay, and they were to continue the business of said company in said town, and assume all the foreign indebtedness, including the said notes to said Kimbark, if the said defendant and his co-sureties on said notes, and other domestic creditors, would assign to them their claims against the company, and the said Reuben Fisk and E. Clarence Sage were to indemnify said domestic creditors and sureties against any

liability by reason of their indorsement or suretyship for said company.

To carry out such arrangement, the said Reuben Fisk and E. Clarence Sage, and Nathan Fisk as surety, executed to the defendant and his co-sureties on said notes a bond in the penal sum of $5,000, conditioned "that the said Reuben Fisk and E. Clarence Sage, their heirs, etc., should, from time to time, and at all times thereafter, save, defend, keep harmless, and indemnify the said *Joseph Wolfenden* and Stephen Erd from any obligation which they, any or either of them, are or may be under by virtue of their, any or either of them, having signed with said manufacturing company, or other person with said company, any note or notes given by said company to one S. D. Kimbark, of Chicago, Illinois, and to save them harmless in like manner from any obligation to pay a certain note given by the said company and signed in addition by the said defendant Reinecke, and Erd and others, to Niebuhr, and now held by one George P. Sanford, of La Valle, Wisconsin, and to save, indemnify, and keep them from all actions, costs, and damages for or by reason of said notes." On the same day, to further carry out such arrangement, the following agreement, under seal, was executed by the said Reuben Fisk and E. Clarence Sage:

"Know all men by these presents, that whereas, we, Reuben Fisk and E. Clarence Sage, are about to purchase the personal property held by the Bank of Reedsburg and the First National Bank of Baraboo, Wisconsin, under and by virtue of certain chattel mortgages executed to the said banks by the Wonewoc Manufacturing Company, and are also about to purchase the real estate mortgages given by said Wonewoc Manufacturing Company on its wagon factory, and the real estate in and about said wagon factory, in the village of Wonewoc, Wisconsin, which real estate mortgages were given to Wm. Woock and Jesse D. Sarles, respectively; and whereas, T. Reinecke, George S.

Cooper, Nathan Fisk, Reuben Fisk, Richard Price, *Joseph Wolfenden,* Geo. P. Kenyon, August Radell, Mary E. Gale Sage, G. W. Bishop, E. Y. Sarles, Bishop & Wrightman, Mason & Moeckel, A. J. Radell, Charles Reinecke, and Stephen Erd signed, indorsed, or guaranteed, either in whole or in part, the several notes for which the above-mentioned chattel and real estate mortgages were given as collateral security: Now, therefore, we, the undersigned, Reuben Fisk and E. Clarence Sage, do agree, to and with the said signers, indorsers, and guarantors of the notes above mentioned, in consideration of the sum of one dollar to us in hand paid, the receipt whereof is hereby acknowledged, that we, the said Reuben Fisk and E. Clarence Sage, will release the above signers, indorsers, and guarantors of the above-mentioned notes from any and all obligations incurred by the said signers, indorsers, and guarantors by reason of their, or either of them, signing, indorsing, or guaranteeing any of said notes, in case the said Reuben Fisk and E. Clarence Sage shall purchase the property above mentioned, or the same shall be purchased by any one for their benefit or in their behalf. That such release shall take effect and be in force as soon as the said chattel mortgage property is purchased, and the said real estate mortgages are purchased by said Reuben Fisk and E. Clarence Sage, or any one in their behalf."

This agreement is a part and parcel of said transaction, and must be read with the above bond, and in the light of the surrounding circumstances, in order to ascertain the full purpose, intent, and meaning of the latter. It seems that this bond was left in the care of Wilkinson, who drew it, in order to await the consummation of the arrangement by the purchase of the property. Soon thereafter the property was purchased according to said arrangement, and the purchasers carried on the business as a partnership under the name of the Wonewoc Wagon Company. But when the

purchase was made, it was done in the name of Mary E. Gale Sage, the wife of E. Clarence Sage, in the place of his name, he acting for her as her agent, and in the names of Reuben Fisk and his brother Nathan Fisk, the surety on said bond. When said bond was given it was understood and agreed that the obligees should keep the matter a secret in order to enable Fisk & Sage to buy up the claim of Kimbark at a large discount, as it was feared that if he should know that Fisk & Sage had assumed the payment of it, he would exact the whole amount of the notes. The secret was well kept, and the claim of Kimbark was purchased by Reuben Fisk and Nathan Fisk and Mary E. Gale Sage (her husband, Clarence Sage, acting for her, as a matter of course, for she had nothing personally to do with the matter), at fifty cents of the face of the notes. Some time afterwards, the said Mary E. Gale Sage sold out her interest in the property and business to her two copartners, and to William Case and M. H. Case, and this copartnership organized the corporation,— that is, the plaintiff in this suit,— and now are doing business by the use of the same property, under articles of incorporation, and as part of its property this corporation now pretends to own and hold the Kimbark notes, and has brought this suit to recover the amount thereof against the defendant and his co-sureties thereon.

This is believed to be a fair and reasonable statement of the facts, as ascertained from the oral testimony and from the above bond and agreement.

1. It is contended by the learned counsel of the respondent that Reuben Fisk and E. Clarence Sage did not become the purchasers of the property according to the arrangement of which said bond formed a part. Reuben Fisk was, at least, interested in the purchase, and if there is any defense against the notes by reason of this bond of indemnity, it is, at least, good as against him. The notes were past due, and all those who became interested in the property,

and thereby claiming an interest in the notes, are subject to all of the defendant's equities against them. To treat Mary E. Gale Sage as a stranger to the transaction would be a subterfuge in view of the fact that her husband, E. Clarence Sage, introduced her into it in his place and then acted as her agent. She, as well as Nathan Fisk and the Cases, came in under the original parties, and have taken the benefit of this transaction with the defendant, and ought, in equity at least, to be subject to it.

2. It is contended that there was no consideration for the bond. The seal imports a consideration. The defendant had claims against the company, besides being its surety on these notes. By this arrangement and the bond, he has been held off from any attempt to secure himself out of the property of the company until, by reason thereof, it has passed beyond his reach. He might have been able to have compromised these notes at fifty cents of their face, had he not supposed that he was released therefrom. It is said that he has not assigned his claims to the purchasers of the property according to the agreement. But he has not attempted to enforce them, and stands ready to assign them at any time; for in his hands, in consequence of this arrangement, they are utterly worthless, for the old company is *functus officio*, and its property gone beyond his reach, by his own consent. From the time the Fisks and Sage, and those holding an interest under them, purchased the property, and continued the business in that town, and bought in these notes by virtue of the arrangement, the claims of the defendant against the old company were discharged, the same as these notes against which the defendant had been thus indemnified were from that time released, without the formality of an assignment of the claims, or of a written release of the notes. This would be the effect of the agreement, at least in equity.

It must not be forgotten that in this state an equitable

defense may be interposed to an action at law, and it will not do to apply the strict and technical rules of the common law to such a transaction as this, to sustain the action in a 'case where not to give full effect to the agreements of the parties according to their spirit and intent would be to sanction a fraud. The bond must be construed in connection with the other written agreement above recited, to which the defendant was also a party, and the surrounding facts and circumstances resting in parol. The defendant lost his chance of security upon the property of the old company for his claims and his liability as its surety, and of a compromise of these notes for less than their face, and allowed the parties to purchase the property without any competition, let, or hindrance from him, and the parties purchasing have received all the advantages conferred by the agreements. This was consideration enough.

The testimony of Reuben Fisk is: " *Wolfenden*, in particular, would not assign his claim unless we would protect him in this Kimbark matter and that at La Valle, and I talked with Mr. Sage, and told him that if we could get them to agree that they would not let anybody know that we had entered into any arrangement of that kind,— but I thought after they had come up, and looked the premises over, we could settle the claim very cheap with Mr. Kimbark; that he would not see anything then in it — if they would agree to keep it still, *we would give them a bond that we would protect them on that.*" In view of such an arrangement, where is the justice or equity in allowing the successor corporation of these parties to collect from the defendant these notes, which they had so purchased at a large discount for their own benefit only because they had assumed the liability to pay them. The language is that " we could *settle* the claim very cheap with Mr. Kimbark," not to buy it at fifty cents on its face, and then hold it against the defendant for the full amount. It was under-

stood when this arrangement was so consummated that the obligation of these claims, upon which the defendant was surety for the old company, was upon them to pay or "settle" them. This comports with the language of the written agreement in respect to other like claims " to *release* the signers or indorsers, etc., from any and all *obligations* incurred by reason of their signing, indorsing," etc., and "that such *release* shall take effect and be in force as soon as the said chattel mortgage property and the real estate mortgages are purchased." This agreement and the bond, and the clear understanding of the parties connected therewith, show conclusively that the bond should take effect and be in force on the same contingency, to wit, the purchase of the property, however or wherever it was left in the mean time.

This disposes of the contention that the bond was never delivered so as to take effect. If it was left as an escrow in the hands of a third person, the obligees would be entitled to it when the conditions upon which it was to take effect had been performed. *Everts v. Agnes,* 4 Wis. 343; *Beloit & M. R. Co. v. Palmer,* 19 Wis. 574. It is very clear that said bond was intended to operate as a release of the Kimbark notes just as soon as the parties should obtain them, either by payment or purchase, if, even before that time, the defendant would be liable to pay them to Kimbark and seek his remedy and reimbursement on the bond. If it was not technically a release in law, it will be held to be a release in equity, and at law also to save circuity of action. *Ellis v. Esson,* 50 Wis. 145. Courts of law regard the *legal* right, while courts of equity regard the *equitable* right.

But we think it clear that the bond operated as a release of this claim after its purchase, both at law and in equity, as shown by the authorities cited in the brief of the learned counsel of the appellant. *Phelps v. Johnson,* 8 Johns. 54;

*Cuyler v. Cuyler,* 2 Johns. 187; *Robinson v. Godfrey,* 2 Mich. 408; *White v. Dingley,* 4 Mass. 433; *Sewall v. Sparrow,* 16, Mass. 24; *Jackson v. Stackhouse,* 1 Cow. 122; *Hamaker v. Eberley,* 2 Binn. 510; *Reed v. Shaw,* 1 Blackf. 245. The bond having such effect, as soon as said notes were purchased they were paid or released, and did not constitute any part of the property.of the company, so that any persons subsequently becoming interested in or part owner of the property of the company had no interest whatever in the notes. It appears to us that a complete defense to the action was established by the evidence, and the circuit court ought to have ordered a verdict for the defendant rather than for the plaintiff.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.