## ROBINSON *et al. vs.* GODFREY *et al.*

Where a creditor agrees with his debtor, upon a good consideration, that he will never or not for a specified time, pursue against him either any or all the remedies which the law gives for the enforcement of a particular demand, the agreement is not collateral to the original contract of indebtment, giving merely a claim for damages in case of its breach, but operates directly upon the original contract and will bar an action brought upon said contract before the time limited expires.*

Certiorari to Wayne County Court.

The defendants in error, in August, 1849, under the boat and vessel law of 1846, attached the steamer Globe, on a claim for materials furnished. The plaintiffs in error paid a portion of the demand, executed a bond for the balance, and the boat was released, with an agreement on the part of the defendants in error, that they would not attach or molest the boat for the balance of their claim, secured by the bond, until the latter part of September following. Before that time, however, the defendants again attached the boat for the residue of their demand, and the defense set up was, that the defendants in error were barred by their agreement made upon the partial payment, the execution of the bond, and release of the boat in August previous, from proceeding by attachment against the boat. In other words that their remedy by attachment was suspended until the latter part of September, which time had not elapsed.

*Van Dyke & Emmons,* for plaintiff in error.

*J. F. Joy and A. D. Frazer,* for defendants in error.

By the Court, DOUGLASS, J.

On the 23d day of July, 1848, Atkinson & Godfrey, the plaintiffs below, having a claim for work and labor done, and materials furnished in building the steamer Globe, which was a specific lien upon the boat, enforceable at any time by complaint and attachment under the boat and vessel law, (*R. S.,* 1846, *Ch.* 22,) for a valuable consideration, agreed with Robinson, the master and owner of the boat, that they would not proceed to enforce such lien until the end of September then

*See case of Morgan *vs.* Butterfield, decided January term, 1854, in next Vol.

next. But on the 18th of August of that year, they made complaint and sued out attachment, by virtue of which, the boat was seized, in violation of their agreement. The present action is against the obligors of the bond, given to release the boat from this attachment, and may be regarded as a continuation of the original proceeding. The plaintiffs in error, who were defendants in the Court below, insist that the agreement is a bar to this action. It is admitted that it is a good answer to this suit upon the bond, if it might have been set up in bar of the original suit, had it proceeded to trial without any bond being given. So that the simple question presented for our consideration, is whether a valid promise, not to assert a particular remedy for a specified time, will bar an action brought before the time expires.

Were this question *res integra*, we imagine no Court would long hesitate as to how it should be determined. It seems to us very clear, upon principle, that whenever a creditor agrees with his debtor, upon good consideration, that he will never or not for a specified time, pursue against him, either any or all- of the remedies which the law gives for the enforcement of a particular demand, the agreement is not collateral to the original contract of indebtment, giving merely a claim for damages in case of its breach, but operates directly upon the contract, and as the case may be, destroys or modifies the legal rights and obligations which grow out of it. The right of the creditor is simply, a right by means of established legal remedies, to recover such damages as the law gives, for breach of the contract. The co-relative obligation of the debtor is what the law, through the instrumentality of these remedies, will oblige him to pay or perform. The law applied to the contract, is the measure of each. (*McCracken* vs. *Hayward*, 2 *How. R.*, 612, 613.) An agreement *never* to sue, annihilates both. In legal sense, it destroys the contract. It leaves remaining but the naked duty of the debtor, to which no right corresponds, and of which the law enforcing obligations only, takes no cognizance. As to the debtor with whom it is made, it extinguishes the debt, though not as to others who may also be collaterally liable for it. (*Story on Bills*, § 409.) It is therefore in effect, a *release*, and it has always been pleadable in bar as a release. (2 *Bac. Abr.*, 614; *Bouv. Ed.*, 8 *Ib.*, 248, *and cases there cited.*) As the rights and obligations growing out of a contract of indebtment

are thus *extinguished* by an agreement *never* to sue, so, and for the same reason, they are modified by an agreement not to sue for a limited time. Such an agreement, if the intent of the parties is carried into effect, extinguishes the right of the creditor to enforce, and the obligation of the debtor to make payment, until the time limited expires. It is, therefore, an extension of the time of payment or performance of the contract—a giving time to the debtor. Between an agreement to give time and an agreement not to sue for a limited time, we can perceive no difference, except in the language used by the parties to express their intentions. Throughout the books they are treated as identical, and each is described by language, which as well, and oftentimes better, denotes the other. Thus they are both constantly spoken of as agreements for delay, for forbearance, for indulgence; and agreements to stay legal proceedings which have been commenced, as judgment, execution, and the like, are constantly spoken of as agreements to give time to the debtor.

Now as the parties intend the same thing in both cases, and it is the undoubted duty of the Court to carry out that intention, unless it violates some rule of law or public policy, it seems absurd to say that the one is collateral to the contract of indebtment and the other is not; that the one modifies the rights and obligations growing out of it, and the other does not; that the one being in form an agreement to extend time, suspends the remedy until the time expires; the other, being in form an agreement not to sue, does not suspend the right of action for an hour. And yet this we must say, if we adopt the rule contended for by the plaintiffs below; for few principles of the law are better settled than that an agreement to extend the credit, does suspend the right to sue until the credit has expired. Numerous authorities show that an agreement not to sue has the same effect. There is a very numerous class of cases which go to establish the well settled doctrine that an agreement for forbearance between the creditor and the principal debtor releases the surety, if made without his assent. They all go upon the ground that such agreements modify the original contract of the parties and import a suspension of the rights of the creditor during the stipulated period of delay. It is said that if the surety was still held liable

he would be bound by a *different contract* from that which he entered into. (*Story on Bills,* § 413, 414.) Such agreements in most of the cases have been in form extensions of time, but it may be observed that throughout all the discussions on this subject, it has been constantly assumed, both by Courts and counsel, that agreements not to sue, were of the same nature, and would equally suspend the remedy. To these we need not particularly refer, although they furnish strong evidence of the law on this subject; nor need we refer to those cases where, after suit commenced, there has been an agreement to stay proceedings, such as judgment, execution, &c., which has always been held to bind the creditor and therefore release the surety. Since these, C. J. Shaw, in Fullam *vs.* Valentine, (11 *Pick.*, 160,) distinguishes on the ground that such agreements are enforceable by the Court, under the general authority it has by the common law to regulate and order the course of proceedings in all cases before it, with a view to secure to all parties their just rights. The Bank of the United States *vs.* Hatch, (6 *Peters,* 250,) is more nearly in point. This was an action against the indorser of a bill of exchange. It appeared that the Bank had previously brought a suit against the drawer, which had been continued beyond the term at which judgment might have been obtained, under an agreement with the drawer founded upon a valid consideration. Justice Story, in delivering the opinion, construes the agreement to be an undertaking by the bank, to surcease all legal proceedings not only in that, but in any other suit against the drawer, and therefore held that it released the indorser. In the course of his remarks, he says: "If the bank had engaged for a like consideration not to sue the drawer on the bill for the same period, there could have been no doubt that it would be a contract suspending all remedy." (See *McLechmere* vs. *Powell,* 12 *Wheat. R.,* 554.) In Hubbly *vs.* Brown, (16 *Johns.,* 70,) an agreement "to wait ninety days longer without sueing," was held to suspend the remedy and therefore release the surety. It may be said that it is not necessary that the agreement should suspend the right of action in order to release the surety, but however this may be, it is certain that beyond the State of Massachusetts, nearly all the cases have gone upon this ground expressly.

There are other cases where similar agreements have been set up in defense by the very person with whom they were made. In Tatlock *vs.* Smith, (19 *Eng. C. L. R.,* 94,) an undertaking not to sue until certain acts were done, was implied from an agreement between insolvent debtors and their creditors, and was held to bar an action brought by one of the creditors before the acts were done. Stracy *vs.* The Bank of England, (*Ib.,* 232,) is also a case where an implied agreement not to sue until a certain act was done by the plaintiff, was held a good bar to the action. Tindal, C. J., in delivering the opinion, says: "It is urged by the plaintiffs that if this is an agreement on their part, it may be the ground of an action by the bank to recover damages, but that it is no bar to the present action. But the agreement is not set up as a perpetual bar; it is merely insisted on as an objection to the action being brought at the present time. It is urged as an agreement by which the plaintiffs have, for a good consideration, restrained themselves from sueing, not perpetually, but only until they have done a particular act." (See also *Allis* vs. *Probyn,* 2 *Cromp., Mees. & Ros.,* 408.) These cases seem to establish the proposition that agreements not to sue, and in the same manner, agreements to extend the credit, operate directly upon the rights and obligations of the parties to the contract, and as the case may be, destroy or suspend the remedy. Indeed it seems to us that the opposite view contended for, makes a distinction where none exists, violates all legal analogies, frustrates the real intent of the parties, and must, (we do not say in this, but in a vast majority of cases,) make the Court an instrument of manifest wrong and injustice.

Satisfied as we are, however, of the correctness of the views we have above expressed, we are compelled to admit that there is a train of decisions with which they are in direct conflict, and no one of which, so far as we know, has been directly and expressly overruled. These have received our attentive consideration. The origin of the doctrine they establish is somewhat peculiar. It seems that it was anciently a maxim of the English Courts, that where the remedy was once suspended by act of the party, it was gone forever. This maxim, if it did not originate with, was at least formerly made the ground and reason of the doctrine, that if the obligor made the obligee his executor, or if a man

married his debtor, it was in either case, a release of the debt. (*Plowd,.* 8 *Coke R.*, 136; 1 *Salk.*, 299; *Cr. Chas.*, 373; 2 *Will. on Ex.*, 1124.) And it was also applied to explain other analogous cases, where by the concurrence of the right and obligation in the same legal person, there was an extinguishment of the debt. (*Dyer*, 140, *a.*) Except in this class of cases, I cannot find that it was ever applied, though it may have been. At all events a mere glance at the authorities referred to, will show that it never acquired the dignity of a consistently applied legal principle. But by being thus applied where it worked no injustice, and was merely the wrong reason for correct decisions, it acquired a degree of authority to which it was by no means entitled. At length in Deux *vs.* Jeffries, (*Cr. Eliz.*, 352,) decided in 1594, a debtor being sued upon his bond, pleaded that the plaintiff, by indenture, &c., did covenant that he would not sue the bond before Michaelmas. It would seem that the action had not been commenced until after Michaelmas. The plea was not put in as a mere suspension of the action, but it was claimed that the facts alleged showed a release in law of the debt, upon the principle that the remedy having been once suspended by the act of the plaintiff, was gone forever. The Court yielding an unquestioning deference to authority of the principle relied on, without distinguishing the cases where it had been applied, from that under consideration, escaped the evident injustice of its application, by a most unnatural construction of the covenant. They said it could not have been the intention of the parties to make it a release; and therefore to avoid giving it such effect, they held that it would not even suspend the remedy until Michaelmas, but merely gave the party a claim in damages, in case of its breach. This case, although it merely determined that a temporary covenant not to sue, was not a release, opened the way for the direct adjudication in *Ayloffe* vs. *Schrimpshire*, decided nearly a century later, that such a covenant does not even suspend the right to sue, until the time specified has expired. The latter case is reported in (2 *Salk.*, 573,) as follows: "In debt on bond for £100, the defendant pleaded a covenant since made by the plaintiff, whereby he covenanted not to sue for the said debt upon the said bond, for and during the term of 99 years." This was held naught upon demurrer, for it is a "mere covenant and does not enure as a release or defeasance, and so cannot be pleaded in

bar." The Court thus assuming, as it did in *Deux* vs. *Jeffries*, to which they refer, that if an action was once suspended by the act of the party, it was gone forever; and that therefore if construed to suspend the action temporarily, the covenant must operate as a release.

Thus, it would seem from the early cases, that the rule that a temporary covenant would not suspend the remedy, originated in the supposed principle that a personal action once suspended, is gone forever. Although it was admitted to be the intention of the parties to suspend the action, and although this intention was expressed in words, yet, as it was supposed that the consequence of giving effect to this intention, would be to destroy another more important object, the validity of an instrument not designed to be destroyed, the covenant was not allowed to constitute even a temporary bar, but the party injured by its breach was left to his remedy by a cross action upon it. (*Per Marshall J. in Garnett* vs. *Macon*, 2 *Brock. R.*, 222.)

Now if there ever was such a principle of law as that assumed by these early cases, and which controlled their determination, (and we have before said we think the early reports show that there was not,) it certainly has long since become obsolete. The rule of Ayloffe *vs.* Schrimpshire should have died with it. But with that tenacity of life which characterizes some of the doctrines of the common law, it has survived to our day, and is still a rule of decision in some judicial tribunals. It passed into the early digests and elementary treatises as established law. (2 *W. Saund.*, 48; 2 *Bac. Abr.*, 614; 8 *Ib.*, 248.) One other English case, and that of recent date, has been determined expressly upon the authority of this ancient decision. (*Thimbleby* vs. *Barron*, 3 *Mees. & Wels.*, 210.) It was made, although we think unnecessarily, one ground of the decision in *Chandler* vs. *Herrick*, (15 *Johns.*, 129,) and was expressly adopted and applied by the Supreme Court of New York, Marcy, J. delivering the opinion, in *Winans* vs. *Huston*. (6 *Wend.*, 471.) The rule was adopted in one very early case in New Jersey. (*Hoffman* vs. *Brown*, 1 *Halst. R.*, 429.) In *Cloppers Adm. vs. Union Bank of Maryland*, (7 *H. & J.*, 93, 103,) it seems to have been considered applicable in covenant, but not in assumpsit. Except the cases mentioned, we have been referred to none in point, beyond the State of Massachusetts. The Supreme Court of that State adopted

the rule to its full extent in Perkins *vs.* Gilman, (8 *Pick.*, 229,) and re-affirmed it in Fullam *vs.* Valentine, *(11 *Ib.*, 156,) although in the last case, we think the decision can clearly be sustained on other grounds. (See also *Foster* vs. *Purdy,* 5 *Met.*, 442.) In so doing it is worthy of remark, that they have but been perfectly consistent with other early decisions of the same Court, establishing a doctrine which certainly is not generally recognized as law elsewhere—namely : that an agreement to extend the time of payment of a note is collateral, and will not bar an action brought within the .time specified. (*Central Bank* vs. *Willard,* 17 *Pick.*, 150; *Allen* vs. *Kimball,* 23 *Ib.*, 473.) The cases last referred to seem, however, to have been overruled by the recent case of Greely *vs.* Dow, (2 *Met.*, 176,) which, in view of the principle upon which it rests, greatly weakens the authority of Perkins *vs.* Gilman and Fullam *vs.* Valentine, in the very Court by which they were originally decided. From the latter cases, and also from Winans *vs.* Huston, in New York, and Thimbleby *vs.* Barron, in the English Exchequer, although they are all of modern date, we feel compelled to dissent, by a firm conviction that they have inadvertently followed the ancient case of Ayloffe *vs.* Schrimpshire, that the doctrine they established, originated in a palpable error, that it is unsound in principle, is at war with Tatlock *vs.* Smith and Stracy *vs.* The Bank of England, in the King's Bench, and with the reasoning and the spirit of the whole course of decisions with regard to the nature of agreements for indulgence, and their effect upon the rights of sureties. The judgment of the Court below must therefore be reversed with costs.