JACOB SELIGMAN v. ALFRED N. PINET AND HARRY L. SHAW, IMPLEADED WITH ADOLPH A. PINET.

*Joint promissors—Release—New agreement—Circuity of action.*

An agreement made by *one* of three *joint* makers of a promissory note with the payee, by which the payee agrees that two-thirds of the note shall be collected of the *other* makers, and that the remaining one-third shall be paid by the third maker, by applying thereon one-third of the profits arising from running a boat formerly owned by the three makers, and which the payee had bid in at marshal's sale, to which agreement the other two makers were not parties, but who paid two-thirds of the note to the payee, but not in reliance upon said agreement, will be respected and enforced in a suit by the payee against the three makers brought after such agreement and payment, said

two makers having been discharged by such payment, and the
third maker having the right to pay the remaining one-third
according to the new agreement.

Error to Saginaw. (Edget, J.) Argued October 18,
1889. Decided November 15, 1889.

*Assumpsit.* Defendants Alfred N. Pinet and Henry L.
Shaw bring error. Reversed. The facts are stated in
the opinion.

*Tarsney & Weadock,* for appellants, contended:

1. A new contract was entered into between Shaw and the plaint-
   iff, which practically treated the note as a several note, and
   Shaw was recognized as owing one-third of the indebtedness.
   The effect of this arrangement was to make a new and sub-
   stituted agreement with Shaw which released him from his
   liability on the note, and, if this be so, the effect of his release
   was to release the other joint makers; citing *Holdridge v. Bank,*
   16 Mich. 66; *Mining Co. v. Brady,* 14 Id. 260; 16 Id. 332.

*Wisner & Draper,* for plaintiffs, contended:

1. The most that can be claimed for the agreement relied upon is
   that it amounted to an extension of credit for one-third of the
   note, for an indefinite time which may never come,—that is,
   until Shaw's profits of the boat were sufficient to pay it. There
   is nothing in it suggesting even a promise on plaintiff's part
   not to sue. Such an agreement, made with one joint debtor,
   in no way prohibits suit upon the joint indebtedness; citing
   *Bank v. Lewis,* 8 Pick. 457; *Bank v. Willard,* 17 Pick. 150;
   *Gahn v. Niemcewicz,* 11 Wend. 312.

Morse, J. Seligman sues upon a joint promissory note
for $1,700, executed by the two Pinets and Shaw, dated
July 3, 1888, and payable six months after date, to his
order, at Seligman's Bank of Commerce, East Saginaw.
Upon this note, before suit, one of the Pinets had paid
two-thirds of the principal, and interest due at the time
of payment.

The defense was that Seligman agreed with Shaw that
he would collect two-thirds of the note of the Pinets,

and extend the time of payment of the remaining third to Shaw until such time as certain profits from the barge Norway would be sufficient to pay such third. That in the fall of 1888 the defendants were the owners of said barge Norway. It was about to be sold by the United States marshal to satisfy a decree against it for certain claims upon the vessel. The defendant Alfred N. Pinet was absent in the Upper Peninsula. Adolph A. Pinet and Shaw were financially unable to redeem said barge from such sale, and the former was insolvent, which Seligman knew; and he was aware that he must look to Alfred N. Pinet and Shaw for the payment of this note, which he then held; that, before the sale of the barge, Seligman, at the request of Shaw, entered into a verbal contract with Shaw in which contract Shaw agreed to notify him when said barge was to be sold, and to buy it in for said Seligman, in consideration of which service Seligman agreed to purchase the said barge, and when said barge was purchased to give Shaw one-third of the net profits of the same, and, in the event of the sale of the Norway, Shaw was to receive one-third of the proceeds of such sale. The profits belonging to Shaw were to be applied on the note until it was paid, and time of payment extended until such profits should pay one-third of the same; that the remaining two-thirds should be collected of the Pinets. Seligman should have the right to retain said undivided one-third of the profits and proceeds of the Norway, and as fast as the same was received apply the same on the note. When such profits or proceeds paid one-third of the note Seligman was to surrender the note to Shaw, and pay to him his remaining interest, if any, in the profits and proceeds of the barge. There was no averment in the pleadings that the Pinets were parties to this agreement, or that, when they paid two-thirds of the note, they paid the same under or in

view of such agreement. The defense was made in this suit by Shaw and Alfred N. Pinet, Adolph A. Pinet being defaulted for non-appearance.

It was shown on the part of the defense that Seligman suggested to Shaw that he should attend the sale, and bid the boat in as cheaply as possible, and in consideration for Shaw's services he should have a third interest in the barge. Shaw said to him that he would like "to have the boat put so it would pay for this note," and Seligman consented that Shaw should go down and bid the boat in, and pay him 7 per cent. interest on the note until it was paid; that Shaw should have time to take care of his share (one-third) of the note out of the earnings of the boat. In pursuance of this arrangement, Shaw went to Detroit and attended the sale, and at such sale Seligman bid the barge in for $1,525. After it was purchased Seligman said:

"The boat is mine; what do you want to do?" Shaw said: "Beggars shouldn't be choosers; I will leave it to you." Seligman then said: "You go on and run the boat; I haven't time to spend with it, and I don't want anything to do with it. You go on and run the boat, and do the best you can."

This was about September 22, 1888. Shaw took charge of the boat. He made one trip to Tawas, upon which no profits were made. He then took the barge to Saginaw, and ran it as a lighter, and turned the profits over to Seligman. The boat laid up for the winter, and in the spring Seligman refused to let him handle the boat any longer. Shaw could not swear that any net profits were made, but was told by Seligman's agent that the boat was in debt,—had not made anything as yet.

On cross-examination Shaw testified that the Pinets were not present when this agreement was made, and they were not parties to it, and that he had no agree-

ment or arrangement with them about it; that he did not bid on the boat himself, as Seligman was present and did that for himself. There was no provision in the agreement as to what should be done in case the boat was lost or run behind, the expenses exceeding the profits.

Alfred N. Pinet testified that he went to Seligman's Bank, at East Saginaw, in December, 1888, or January, 1889, and paid two-thirds of this note to Mr. Emerick, who was the cashier or manager of the bank. He told Emerick that Shaw said if he (Pinet) would pay two-thirds Shaw would make the balance good. Emerick replied, "If Shaw said that, it is all right;" and received the money for two-thirds of the note. On cross-examination he testified that he went to see Shaw, and told him they ought to pay the note, and Shaw said that he had an arrangement with Seligman, as far as he was concerned, by which his part was paid, or just as good as paid. Shaw claimed to him that his third was to be paid from the net earnings of the Norway. Pinet did not pay the two-thirds because of any agreement with Seligman, as he had none with him, nor was there any bargain with Emerick that he should be released by such payment.

No testimony was offered by the plaintiff in rebuttal of the defendants' testimony, and the circuit judge directed a verdict for the plaintiff for the balance due on the face of the note, to wit, $586.06. The court was of the opinion that the agreement would not have the effect to extinguish the liability of the defendants. The note being joint, the liability was joint, and—

"Each one was answerable for the whole of the note, and nothing short of an absolute release of one of the parties to the note could have the effect to discharge the entire joint obligation of all the parties."

The judge thought that if the agreement on the part of Seligman was not carried out, and the proceeds applied, in the way indicated by the agreement, upon the note, Shaw might have an action against him for breach of the agreement, but the agreement was not one that Pinet could avail himself of as a defense to the note.

The counsel for plaintiff, to support this judgment, maintain that in *assumpsit* against joint debtors it is no defense that one of them has been discharged from *his share* of the debt by an unsealed instrument in writing, or by an oral agreement, although such contract or agreement is founded upon a sufficient consideration; citing *McAllester v. Sprague*, 34 Me. 296; *Drinkwater v. Jordan*, 46 Id. 432; *Matthey v. Gally*, 4 Cal. 62; *Walker v. McCulloch*, 4 Greenl. 428; *Shed v. Pierce*, 17 Mass. 623. The doctrine of these cases is stated by Mr. Justice Heydenfeldt in *Matthey v. Gally, supra*, as follows:

"It is well settled that a covenant not to sue operates as a release, but the reason for it is only to avoid circuity of action. If the covenant not to sue be broken, the strict right of the covenantee is to recover on the covenant, and, as the recovery must be the same in both suits, the doctrine of release is resorted to to avoid circuity. But this doctrine, being technical, cannot be extended in its construction; and where the debt is joint, and the covenant not to sue is made to a portion only of the debtors, it will not be held as a release of either, but the party who holds the covenant must be left to his action upon it."

See, also, Leake, Cont. 928; 1 Pars. Cont. 28.

But I think these authorities have no application to the case made by the defendants here. And this Court has held that, in the case of a sole debtor, an agreement not to sue is not an independent or collateral undertaking, but goes directly to destroy or modify the original contract, and can be pleaded in bar for that reason, and not on the ground of avoiding circuity of action. *Robinson*

*v. Godfrey*, 2 Mich. 408; *Morgan v. Butterfield*, 3 Id. 615.

It may be true that the arrangement between Seligman and Shaw did not amount to anything more than an agreement not to sue Shaw for his liability on the note, and that it was not the intention of Seligman to release the Pinets, as he was to collect the two-thirds of them. But the intention manifestly was that Seligman should look to the Pinets for two-thirds and to Shaw for one-third. The Pinets have paid their two-thirds, and now the case stands like this: Seligman is suing the Pinets and Shaw jointly for the recovery of the one-third of the note which he had agreed with Shaw he would not sue, but which might be paid out of the profits of the Norway. I cannot agree to any rule of law which will permit Seligman to collect out of the Pinets, after he has received two-thirds from them, this one-third which he has solemnly agreed with Shaw to wait upon him for. If there was a valid consideration for his agreement, as I think there was, and Shaw was the sole debtor upon this one-third, the authorities cited by plaintiff hold that he could plead it in bar of this suit, and that, if Seligman recovers in this action, because the debt is a joint one, Shaw then has an action for the damage occasioned him upon this agreement against Seligman. Seligman agreed to release Shaw from two-thirds of the debt, and to give him an opportunity to pay the other third outside of the Pinets. There is now no debt remaining on the note except this one-third, which Seligman has agreed with Shaw shall be paid in a particular way, an agreement for a breach of which Shaw can recover damages. Why, then, pursue this old idea, and hold that the Pinets and Shaw must submit to a judgment against all of them jointly in this suit? For the result in such case will be that, if the Pinets are forced to pay it, they can sue Shaw for contribution, and, after he has paid it back to the Pinets

(for they have already paid their share), then Shaw can sue Seligman upon his agreement not to sue and recover his damages.   Why not avoid at once this circuity of action, and hold Seligman to his agreement with Shaw, which, if kept, would relieve the Pinets from any further payment on the note, and Shaw from any liability, except such as arises under the new agreement?

If the Pinets had not paid the balance of the note,— the two-thirds,—then there might be some sense in applying the rule invoked by plaintiff's counsel, and shown in the authorities above cited, although we do not wish to say that we would apply it even in that case.   But the case here is simply whether Seligman shall be held in law to carry out his agreement with Shaw, or whether he shall be permitted, in effect, to violate it, and to recover in this suit what he has agreed he would not collect in this way, and leave Shaw and the Pinets to right the wrong in some other action   The intention of the parties, if known, ought to have effect, without any technicality of form or pleading standing in the way.   The same authorities cited by counsel for plaintiff that go so far as to hold that a release of one joint debtor cannot be pleaded in bar for the others or for himself, in an action to recover upon the joint debt, yet hold that if the release is under seal it will discharge all the joint debtors.   But under our laws to-day I think a discharge or acquittance of a debt is just as good without a seal as with it.   See *Milliken v. Brown*, 1 Rawle, 398.

The intention of the contract between Seligman and Shaw, as shown in this record, was that two-thirds, and that only, should be collected of the Pinets, and that the the other third should be paid by Shaw as heretofore stated.   If the authorities cited by plaintiff's counsel, and referred to above, are followed, the intent of this contract between Seligman and Shaw is disregarded and violated.

There is no reason for doing so, except a technical one, which should have no force in this day and age. The Pinets, on the showing made upon the trial of this case, were discharged when they paid two-thirds of the note in suit, and Shaw, who is holden on the other third, is entitled to pay it according to the new agreement.

The judgment below must be reversed, and a new trial granted, with costs to defendants.

SHERWOOD, C. J., CAMPBELL and LONG, JJ., concurred. CHAMPLIN, J., did not sit.