THE STROBRIDGE LITHOGRAPHING COMPANY v. JAMES
A. RANDALL, IMPLEADED WITH JOSEPH BROOKS
AND JAMES DICKSON.

*Partnership—Liability of new partner on renewal notes—Retiring
partner—Release—Charge to jury—Verdict.*

1. In this case it is held that the agreement made by the tele-
grams to accept notes held by defendant Randall, and discon-
tinue the suit, has all the essential elements of a valid con-
tract, upon which an action might have been maintained by
the plaintiff upon a refusal by Randall to deliver the notes;
that such new contract was not collateral to the original con-
tract of indebtedness sued upon, giving to Randall merely a
claim for damages in case of its breach, but that it operated
directly upon such original contract, and could be pleaded in
bar of the same. *Robinson v. Godfrey,* 2 Mich. 408; *Morgan
v. Butterfield,* 3 Id. 615; *Kent v. May,* 13 Id. 38; *Seligman v.
Pinet,* 78 Id. 50.

2. Where the foreman of a jury announced that they found for
the plaintiff in a given sum, and, at the request of plaintiff's
counsel, the court inquired if it included interest, and one of
the jurors replied that it did and stated the amount of the
principal, it is not error for the court, if satisfied that interest
was not included, to send the jury out again, to ascertain such
interest.

Error to Wayne. (Reilly, J.) Argued November 6,
1889. Decided December 28, 1889.

*Assumpsit.* Plaintiff and defendant Randall bring error.
Reversed. The facts are stated in the opinion.

*Charles M. Swift,* for plaintiff, contended:

1. The most that can be claimed for the testimony is that it shows
an executory agreement for accord, and a subsequent tender
of performance, which was not accepted. Such an agreement
and tender is no bar; citing *Rising v. Cummings,* 47 Vt. 345;
*Simmons v. Hamilton,* 56 Cal. 493; *Cary v. Bancroft,* 14 Pick.

315; *Clifton v. Litchfield*, 106 Mass. 34; *Hearn v. Kiehl*, 38 Penn. St. 147; *Kromer v. Heim*, 75 N. Y. 574; *Cushing v. Wyman*, 44 Me. 121; *Young v. Jones*, 64 Id. 563; *Pettis v. Ray*, 12 R. I. 344.

*Orla B. Taylor* and *Edwin F. Conely*, for defendant Randall, contended:

1. Whenever a new consideration is introduced, an agreement to vary the terms of a contract, or change the method of payment of a debt, when carried out, will be binding, and will prevent a recovery on the original obligation. The acceptance by a creditor of a note made by a third person, though for a less sum, will form such a new consideration; citing *Webb v. Goldsmith*, 2 Duer (N. Y.), 413; *Pulliam v. Taylor*, 50 Miss. 251; *Boyd v. Hitchcock*, 20 Johns. 76; *LePage v. McCrea*, 1 Wend. 164; *Booth v. Smith*, 3 Id. 66; *Kellogg v. Richards*, 14 Id. 116; *Frisbie v. Larned*, 21 Id. 451; *Brooks v. White*, 2 Metc. 283; *Goodnow v. Smith*, 18 Pick. 414; *Varney v. Conery*, 77 Me. 527; *Brassell v. Williams*, 51 Ala. 349; *Dryden v. Stephens*, 19 W Va. 1.

2. Where such a new contract has been substituted for the original one, with mutual promises upon which each party has a remedy against the other, the new contract will take the place of the old, and each party must seek his remedy thereon; citing 1 Com. Dig. "Accord" (B. 4), § 6; *Case v. Barber*, T. Raym, 450; *Bradley v. Gregory*, 2 Camb. 383; *Cartwright v. Cooke*, 3 B. & Ad. 701; *Coit v. Houston*, 3 Johns. Cas. 243; *Whitsett v. Clayton*, 5 Col. 476; *Babcock v. Hawkins*, 23 Vt. 561; *Merry v. Allen*, 39 Iowa, 235; *Hall v. Smith*, 15 Id. 584; *Christie v. Craige*, 20 Penn. St. 430; *Bradshaw v. Davis*, 12 Tex. 336; *Jones v. Perkins*, 29 Miss. 142; *Schweider v. Lang*, 29 Minn. 254; *Goodrich v. Stanley*, 24 Conn. 613; *Brown v. Spofford*, 95 U. S. 474; and this defense is good as a plea *puis darrein continuance;* citing *Hearn v. Curran*, 12 S. & M. 361.

3. By his retirement Randall became a surety, both as between himself and Brooks & Dickson, and as to creditors having knowledge thereof; citing *Smith v. Shelden*, 35 Mich. 42; *Bell v. Hall*, 5 N. J. Eq. 477; *Stone v. Chamberlin*, 20 Ga. 259; *Barber v. Gillson*, 18 Nev. 89; *Wilde v. Jenkins*, 4 Paige, 481; *Thurber v. Corbin*, 51 Barb. 215; *Savage v. Putnam*, 32 N. Y. 501; *Colgrove v. Tallman*, 67 Id. 95; *Palmer v. Purdy*, 83 Id. 144; *Conwell v. McCowan*, 81 Ill. 285; *Gates v. Hughes*, 44 Wis. 332.

4. After a creditor has knowledge of the dissolution of the partnership and the assumption of the debts by one partner, any act

between that partner and the creditor changing the contract, extending the time, or any dealing by the creditor with the principal which amounts to a departure from the contract, without the consent of the retiring partner, releases him; citing *Smith v. Shelden*, 35 Mich. 42; *Miller v. McCan*, 7 Paige, 452; *Fellows v. Prentiss*, 3 Denio, 512; and the same principles which are held to discharge a surety in equity also operate to discharge him at law; citing *Baker v. Briggs*, 8 Pick. 129; *King v. Baldwin*, 17 Johns. 384; *Bank of Ireland v. Beresford*, 6 Dow, 233.

Morse, J. In this case both the plaintiff and the defendant James A. Randall come into this Court on writ of error. Neither is satisfied with the judgment in the court below, and both are anxious for a new trial

The plaintiff sued the defendants, who composed at one time the firm of Brooks & Dickson, in *assumpsit*, upon notes made by Brooks and Dickson, before Randall became a member of the firm. Some of these notes were renewed, and some extended, while Randall belonged to the copartnership. A statement of the plaintiff, introduced during the trial, showed $4,140.85 principal and interest due on the renewal notes, $3,531.83 on the extended notes, and $6,497.92 on the other notes. Plaintiff also sued for $5,589, value of printing done and furnished to the new firm. Before the case went to the jury the plaintiff withdrew all of its demands, except the renewal notes and the printing furnished for the new firm. The plaintiff had verdict and judgment for $1,696.74, of which the jury found $1,562.30 as principal and $134.44 as interest.

It appears from the evidence in the case that in April, 1884, the firm of Brooks & Dickson, then composed solely of those two gentlemen, was owing the plaintiff for work done and printing furnished, some $13,000, and in that month and year gave 20 promissory notes of the firm to said plaintiff in payment of said debt. July 1,

1884, the defendant Randall became a member of the firm, the name of such firm continuing as Brooks & Dickson. The articles of agreement of copartnership expressly provided that neither the new firm nor James A. Randall assumed, or in any wise became responsible for, any debts or obligations of "the late firm of Brooks & Dickson," except such obligations, by way of contracts made for the business season of 1884 and 1885, which had in no wise, at that time, been performed. When the evidence was all in, the plaintiff claimed that there was due it, upon the work done and furnished for the new firm, the sum of $3,326.17.

The defendant Randall admitted that the account for such work had not been fully paid at the time suit was brought, but he claimed that certain deductions should be made from plaintiff's claim. Starting with plaintiff's claim at $3,326.17, Randall claimed that the deductions should cut the amount down to $1,753.87, without interest; but he further claimed that the amount from which the deductions should be taken was but $2,758.33, which would leave due the plaintiff, without interest, $990.57. He also claimed a settlement and release of his liability since the commencement of suit, which defense was not permitted by the court to go to the jury. It is evident that the jury did not allow the plaintiff anything for the renewal notes, but based their verdict upon what they found due for the work furnished by plaintiff to the new firm.

"After being absent for a time, the jury returned into court; and, being inquired of as to their verdict, the foreman replied that they found for the plaintiff, for the sum of $1,562.30.

"Counsel for the plaintiff requested the court to inquire of the jury whether such sum included interest. One of the jurors replied that it did; that the principal sum was $888, and, with interest, it amounted to $1,562.30. Coun-

sel for defendant objected to the jury being interrogated on the subject of interest. The court thereupon told the jury that, in whatever amount the plaintiff was entitled to recover, he was also entitled to interest at 6 per cent.

"Thereupon the jury again retired, and, after being absent for a time, returned into court, and, being inquired of as to their verdict, said that they found for the plaintiff, in the sum of $1,696.74, of which $1,562.30 was principal and $134.44 interest."

Both plaintiff and defendant complain of this action of the court and jury, as shown in the above quotation from the record. The plaintiff immediately moved to set it aside, on the ground that it was manifest that the jury were giving plaintiff a verdict, not for any sum that it claimed, but for the amount defendant insisted constituted an offset to its claim. It claims that upon the work furnished the new firm there should at least have been found the sum of $1,753.87 due, with interest upon the same at 6 per cent.

The defendant made three statements or computations, based upon the evidence as to the balance due plaintiff upon this work,—No. 1 showing the balance to be $990.57; No. 2 $1,753.87; and No. 3 $1,465.35. The court only submitted the second statement to the jury; and therefore plaintiff's counsel claims that the verdict, at all events, should have been for the sum mentioned in said statement, with interest, but that in reality the jury took the sum $1,562.30 (which Randall claimed, in this statement, No. 2, should be deducted from $3,326.17, the amount claimed by plaintiff), and gave their verdict for that sum as principal, when, under the instruction of the court, it should have been for $1,753.87.

We do not so understand the matter. Mr. Randall made his three statements, as he had a right to do, under the evidence, to meet different phases of it, or the facts as they might be found by the jury. The court said, in his charge:

" I will submit to you, for the purpose of aiding you, a statement prepared by the plaintiff's counsel, and also a statement (No. 2) prepared by the defendant's counsel."

But he did not confine them, in their findings, to these statements, or either of them, but said to them that, from the evidence in the case, they must determine what amount, if anything, was due from the defendants for the goods furnished.

We do not propose to go into the evidence; but we find nothing in the testimony, or in the charge of the court, showing that the jury found a sum not warranted by the evidence or the law of the case as regards the amount due for this work. And we think it was proper for the court, under the circumstances, to inquire if the verdict included interest, and that, if he was satisfied it did not, he had the right to send them out again, to ascertain the interest. It does not appear, however, from the record, but that they retired again for that purpose upon their own motion. The fact that one juror got mixed in his figures in his response to the inquiry will not vitiate the verdict finally rendered.

The plaintiff's counsel also claims that the new firm was liable upon the renewal notes, as a matter of law, and that the question of such liability should not have been submitted to the jury. The question, we think, was one entirely of fact, to be deduced from the testimony, and that the court charged the jury, in this respect, too favorably for plaintiff. The circuit judge instructed them that if they believed from the testimony that " it was understood " by the plaintiff that the new firm was to be liable for the extension of the old notes by these renewals, then the defendant was liable.

" If you believe from the testimony that it was distinctly understood by the plaintiff in the case that, although Mr. Randall was in the firm of Brooks & Dick-

son, he was not liable on the renewals that were made by the firm, then I do not think he can be held. In this connection, I will say to you that if nothing was said to the plaintiff by the defendants Brooks & Dickson, and Randall, and, when these notes fell due, they were renewed by Brooks & Dickson, and Randall being then a partner in the concern, and the time for payment being extended, Mr. Randall would be liable on the notes. That is, an extension of time for the payment to the firm of Brooks & Dickson would be sufficient to hold Mr. Randall."

This instruction left out the fact that it "takes two to make a bargain," and rested the liability of Mr. Randall entirely upon the understanding of the plaintiff. The jury evidently found that plaintiff, when the notes were renewed, did not "understand" that Randall was making himself liable for them by such renewals, and we think there was testimony which would, if believed, warrant such a finding.

Defendant Randall claims that by the action of plaintiff since the suit was commenced he has been released from all liability on account of said firm of Brooks & Dickson; and he filed a proper plea, setting up such claim. It appears from the testimony that, when the firm of Brooks & Dickson dissolved, Brooks and Dickson paid Randall some money, and gave him their promissory notes, four in number, for $1,000 each. July 31, 1885, seven months after this suit was begun, Randall received the following telegram from the president of plaintiff company:

"NEW YORK, July 31, 1885.

"JAMES A. RANDALL,

          "Attorney at Law:

"Will you turn over to us the notes, amounting to $4,000, you hold of Brooks & Dickson? If so, will release all parties from suit against Brooks & Dickson, and they will get you released from all other indebtedness of the firm. Answer here, quick.

          "HINES STROBRIDGE."

To this Randall replied as follows:

"DETROIT, July 31, 1885.
"To HINES STROBRIDGE, STROBRIDGE LITHOGRAPHING
    Co.,
    "44 West 23d St., N. Y. City:
"Certainly. Notes have been assigned to Atkinson, but will get them, and turn them over to you, on conditions your telegram.            JAMES A. RANDALL."

Randall testified that he immediately procured the notes from Atkinson, who held them as security for a debt Randall owed him, and has ever since been ready to carry out the agreement. He brought the notes into court, with his plea, ready to be delivered. He testified that he notified Mr. Hines Strobridge, the following day, that he had obtained the notes, and had them for him; that from this until some six months thereafter he did not hear anything from Strobridge, and was under the impression that the matter was settled.

February 2, 1886, Strobridge wrote Randall as follows:

"*Dear Sir:* Your favor of the thirtieth ult. is at hand, and noted. We have been expecting to hear that Brooks & Dickson have carried out, in good faith, their proposition to settle the claim against that company, and which would release you from all liability. I think our attorneys, H. & H., in New York, have not exerted themselves to bring it about. We have written to them to-day, requesting them to bring it to a close, if they can, and, if not done at once, they should prevent the discharge of Nunnemacher as assignee of said estate. Howe & Hummell, or Samuel Colville, told me that Nunnemacher had not kept within the line of duty in disposing of the assets, and they acknowledge that Nunnemacher could be made to pay back the estate moneys that had been misappropriated, and we believe substantially what you have told us in regard to his actions. We hoped to be able to settle the matter, and that the suit we felt called upon to bring against you could be withdrawn."

Randall further testifies that he did not know, and was

not informed, as to what arrangement Strobridge had with Brooks & Dickson, upon which he acted when he sent the telegram to Randall offering to settle. Mr. Strobridge testified, in reference to this matter, that he sent the telegram. The sending of it was the result of a conference held in New York with Brooks. Brooks promised that, if Strobridge would get the notes, Brooks & Dickson would furnish him the money for them, $4,000. Two weeks afterwards he learned from Brooks that he could not get the money, and the matter was dropped. The notes were to be sent by Randall to New York. They never came, and he never asked Randall to send them. Did not notify him when or where to send them. Never said anything to him about getting them, after the exchange of telegrams. The agreement with Brooks was for the release of all the partners. Brooks did not fulfill his agreement with witness, so Strobridge did not carry out the agreement with Randall. Nothing was done, however, to declare the agreement off for six months. Does not think that he ever said anything to Randall about the notes, or notified him that he would not take the notes, before the plea of settlement was put into the case.

Defendant Randall submits that he was released, in law, under the testimony of himself and Strowbridge, but that, at any rate, the matter of such release should have been submitted to the jury. The counsel for plaintiff contends that, under the testimony of Mr. Randall, this was an agreement to settle, in the nature of an accord and satisfaction, which is not good until performed; that no tender of performance can take the place of satisfaction, unless accepted; that, as the case stands, there was an accord, but no satisfaction, and therefore there is no bar to the action, under all the authorities; that, in an agreement of this kind, if anything remains to be done by either party, the new agreement will not be binding.

There was a good consideration for this agreement between the parties. A suit was pending, and a dispute between them. Strobridge writes that, if Randall will turn over these notes to him, he will release all the parties from the suit; in other words, discontinue it. Randall replies that he will accept the proposition and get the notes, and turn them over. Randall obtains them next day, and writes soon thereafter to plaintiff that he has them ready to turn over; and, according to Strobridge's testimony, he never informs Mr. Randall that he will not take the notes, and in his letter of February, 1886, he gives Randall to understand that the matter would probably be closed, and he released. There is no controversy as to the authority of Hines Strobridge to make this settlement.

It seems to me that a new and valid agreement was made to take these notes of Randall in payment of all claims against him growing out of this suit, or involved in it, and that, under the facts, there really being no conflict as to the material facts as to this settlement, or agreement to settle, between Strobridge and Randall, a verdict should have been directed, upon the whole case, in Randall's favor. Strobridge agreed to take the notes and release Randall. Randall accepted the proposition, and notified Strobridge that he had the notes for him. Strobridge did not notify Randall that he would not take them, but led him, for several months, to believe the matter was settled. When it was ascertained that the plaintiff intended to go on with its suit, Randall pleaded this settlement, and tendered the notes to plaintiff, by bringing them into court. This seems to me a sufficient bar to the suit as against Randall; and the plaintiff must be held to its bargain to take the notes.

I do not think that this case calls for the consideration of the abstract question whether accord without sat-

isfaction would be a good plea. The agreement made here by the telegrams has all the essential elements of a valid contract, and upon which an action might have been maintained by plaintiff upon a refusal by Randall to deliver the notes. See *Coit v. Houston,* 3 Johns. Cas. 243; *Whitsett v. Clayton,* 5 Colo. 486.

And this new contract was not an agreement collateral to the original contract of indebtedness upon which plaintiff was suing, giving to Randall merely a claim of damages in case of a breach of it, but it operated directly upon the original contract, and could be pleaded in bar of the same. *Robinson v. Godfrey,* 2 Mich. 408; *Morgan v. Butterfield,* 3 Id. 615; *Kent v. May,* 13 Id. 38; *Seligman v. Pinet,* 78 Id. 50 (43 N. W. Rep. 1091).

The judgment is reversed, and a new trial granted, with costs to the defendant Randall.

The other Justices concurred.