FLANDERS CO. *v.* CANNERS' EXCHANGE SUBSCRIBERS AT
WARNER INTER-INSURANCE BUREAU.

1. COMPROMISE AND SETTLEMENT—FAVORED BY LAW.
   The law favors contracts in settlement of disputed matters,
   and the avoidance of litigation.[1]

2. INSURANCE — CONTRACTS — ACCEPTANCE OF COMPROMISE OFFER
   CONSTITUTED BINDING CONTRACT OF SETTLEMENT.
   Where an insurance company's offer to pay to insured a
   certain amount, which was less than the face of the
   policies, was accepted by insured by a telegram, a binding
   contract of settlement was entered into which neither
   party could later repudiate.[2]

Error to Sanilac; Boomhower (Xenophon A.), J.
Submitted April 16, 1926.    (Docket No. 108.)    De-
cided June 7, 1926.

Assumpsit by the Flanders Company against the
Canners' Exchange Subscribers at Warner Inter-
insurance Bureau and another on policies of insurance.
Judgment for plaintiff.    Defendants bring error.
Reversed, and judgment ordered entered in accordance
with a compromise agreement.

*Alex B. Simonson* and *Zane, Morse & Norman,* for
appellants.

*C. F. Gates* (*Hubert J. Gaffney,* of counsel), for ap-
pellee.

SNOW, J.    Plaintiff was the owner of a large can-
ning factory at the village of Deckerville, Sanilac
county, Michigan, which was totally destroyed by fire
on the 5th day of February, 1924.    The factory was
insured in the sum of $105,000, of which the defend-

[1]Compromise and Settlement, 12 C. J. § 32; [2]Id., 12 C. J. § 35.

ants carried $60,000, as evidenced by five policies. On these policies plaintiff sued. The defendants pleaded in bar that a compromise settlement of $50,000 had been agreed upon between them as the creation of a new contract to settle the dispute over the loss, and offered to pay that amount into court or to the plaintiff, and to confess judgment therefor. This agreement, so pleaded by the defendants, is evidenced by a somewhat lengthy correspondence, and followed extended negotiations between the parties. Such of the correspondence as is necessary to a knowledge and construction of the agreement is as follows:

On the 18th day of December, 1924, defendants' attorneys wrote plaintiff, making an offer of compromise in the following language:

"But to make the sum a round figure we will, and now do, offer in full compromise settlement $50,000 flat, without any interest, and we do it in order to avoid litigation. It is in our judgment a very liberal offer. This offer is for you to take or leave. The offer will remain open until December 26, 1924, but on that day the offer is withdrawn and will terminate if not accepted by notice received by us before or on that day at 12 o'clock noon Central Standard Time. It is not a trading offer for you to come back with a counter proposition. This amount will not be raised or varied, and it will carry no interest.

"If you accept this offer the only safe way for us to act, since you have notified us of an interest of two banks, one the State Bank of Deckerville, and the other the Farmers' State Bank of Deckerville, and since you have notified us of an interest of H. A. Barber, assignee (and of what he is assignee we have no knowledge and can obtain none from your statements), is for you to send the policies, Nos. 80728, 84449, 89974, 89975 and 90934 through your bank to some Chicago bank. The policies should be accompanied by (a) releases from the two banks named and from Barber, assignee, which releases should be drawn for and executed by them, and (b) a signed receipt of the Flanders Company upon the form which we inclose.

The check for the amount we must make payable as the policy requires, to the Flanders Company and H. A. Barber, trustee, jointly. Your direction to the banks should be to deliver the policies and the receipts or releases to our firm, upon our delivery to the Chicago bank for your account of a check for $50,000 payable to the Flanders Company and H. A. Barber, trustee."

After the receipt of this letter by plaintiff it asked for an extension of time to consider the offer and for a conference of attorneys, which request was refused. Nothing further was done by either of the parties until the last day fixed in the offer, to wit, December 26th, when, at 10:27 a. m., plaintiff telegraphed defendants as follows:

"Re letters yours twenty-second and eighteenth we accept your offer compromise fifty thousand dollars net to us documents will be sent through banks as suggested."

Later, to wit, at 11:36 on the same day, plaintiff sent a second telegram to defendants' attorneys as follows:

"Cannot accept compromise of Canners policies as we find suit had already been commenced before we sent our earlier wire today."

On the same day, upon receipt of the above telegrams, defendants telegraphed plaintiff as follows:

"Your telegram accepting offer was received and constitutes contract of compromise settlement binding upon our clients as well as you. Your later telegram in which you say you cannot accept compromise as you find suit had already been commenced before you sent your earlier wire is therefore of no effect and will be disregarded."

This telegram was confirmed by letter later on the same day.

Defendants, upon the trial, contended that the correspondence above set forth constituted between them and plaintiff a compromise settlement agreement, and

that they were liable for $50,000, the sum agreed upon, and no more.   Plaintiff contended that the offer of defendants and the acceptance by plaintiff constituted simply an accord, with satisfaction deferred, consequently giving plaintiff, the party for whose benefit the accord was made, a right to waive it at any time before satisfaction had been made in full, and to stand on the original contracts of insurance.   In other words that the agreement was not binding upon plaintiff until satisfaction had been made.

The circuit judge, before whom the case was heard without a jury, accepted plaintiff's contention, and in a finding of law so held.   The court's finding of facts, in so far as they are important in the disposition of the case, were in accord with our previous recital thereof.   Judgment was rendered in favor of the plaintiffs in the sum of $60,000, and defendants bring the case here on writ of error.

In its disposition of the case the trial court, in substance and effect, held that the acceptance by plaintiff of defendants' offer to pay amounted to an agreement to accept the money when and if offered, and not to accept the agreement to pay, and that it had the right to refuse acceptance of the money at any time, even though it had previously agreed to accept.   In short, that plaintiff's acceptance amounted to nothing at all.   All of which must be construed to mean that a party to whom something is due cannot make a binding contract for compromise of his claim without actually receiving the amount agreed upon by such compromise.

The law favors contracts in settlement of disputed matters, and the avoidance of litigation.   It ought never to deny such right, nor circumscribe the means of carrying it into effect.   What was done by the parties in the instant case was to attempt such a settlement, and to evidence it by writing.   They were

principals to an unliquidated contract, viz., the policies of insurance.  The plaintiff was entitled to be paid by defendants its loss sustained by fire, not in excess of the amount of insurance named in the policies. The amount of this loss had not been determined; it was in dispute; plaintiff's claim, therefore, was unliquidated.  No one may contend that there could exist a legal reason that would prevent them contracting between themselves to arrive at the mutually desired result.

Defendants made the first move to bring about a satisfactory adjustment of the matters in dispute. They submitted to plaintiff an agreement to pay $50,000 flat, and held it open for acceptance until a certain time.  Within the time granted, plaintiff accepted in these words:

"We accept your offer compromise fifty thousand dollars net to us.  Documents will be sent through banks as suggested."

This agreement in writing between the parties is plain and without ambiguity; there was good and sufficient consideration; it contains in fact all the elements of a valid contract.  It was a contract; and it was the agreement therein contained which was accepted in satisfaction of plaintiff's demand.  What more could possibly be done to make a contract of settlement binding upon all its parties?  It is without doubt that plaintiff could have sued and recovered upon it, and defendants would have had no defense.  This being true, we are unable to agree with the contention of plaintiff that its agreement with defendants simply amounts to an acceptance of the performance of a new promise made by the defendants, and that until performance it means nothing at all.

Both parties cite with confidence *Henderson* v. *McRae,* 148 Mich. 324, as authority sustaining their respective positions.  This case recognizes, in issues

of this character, the existence of one of two possible conditions; one where the intention of the parties was to accept the promise of one to pay the other in satisfaction of the original demand, and the other to accept only the performance, which, if refused by the promisor, gave the promisee the right to rescind the compromise contract and bring his action on the original agreement.      See, also, *Strobridge Lithographing Co.* v. *Randall,* 78 Mich. 195.

The contract in the instant case must be held as clearly evidencing the intention of the parties to accept a promise to pay.      Defendants have never refused to pay, and plaintiff has been given no opportunity to rescind and claim under the policies of insurance.

Our attention is called by counsel for plaintiff to, and we have examined, many cases discussing generally and recognizing the existence of an accord which, to become binding, must be satisfied, but we find none of them based upon facts which so clearly show the intention of the parties as do the facts of the instant case.      These cases for the most part involve negotiations between parties to pay a sum less than a liquidated amount due, a failure on the part of the promisor to fulfill, the ambiguity of the contract, and other situations which have no application here.

It is perfectly clear to us that by negotiating it was the purpose and desire of each of the parties to determine and decide upon the amount of loss plaintiff had sustained by its fire, and to have paid it such amount so agreed upon.      After such negotiations and attempts, it certainly was not the intention of the insurance company to make a proposition which plaintiff could accept and then reject at any time before it could get the money paid over, the policies surrendered, and the claims receipted for.      Neither was it the thought of plaintiff that it could accept the proposal of defendant, and at will repudiate that ac-

ceptance.  If it had any idea it could withdraw its acceptance until the money had been paid, why the haste in sending the second telegram, and why the designation of the transaction as a "compromise?" The making of the offer and its acceptance created a compromise agreement, possessing all elements of a valid contract.  Verdict should have been directed in accordance therewith for $50,000.

Judgment reversed, and one ordered entered in favor of the plaintiff and against the defendants for such an amount.  Defendants will recover costs.

BIRD, C. J., and SHARPE, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.