DETTLOFF v. HAMMOND, STANDISH & CO.

1. TORTS—JOINT TORTFEASORS—NEGLIGENCE—DEATH.
   In an action for the negligent killing of plaintiff's decedent, a driver of a milk wagon employed by a creamery company, whose death was caused by defendant's motor truck, defendant's liability rested solely upon its tort, and the creamery company was not a joint tortfeasor with defendant.

2. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—LIABILITY OF EMPLOYER—CONTRACTS.
   The liability of an employer, by virtue of the workmen's compensation act, rests solely upon contract.

3. ACCORD AND SATISFACTION—PAYMENT—TENDER—CONTRACTS.
   An agreement between a beneficiary under the workmen's compensation law in her individual capacity and also as administratrix of the estate of deceased, and the employer, insurance company, and claimant's attorneys, providing for suit to be brought against the owner of the motor truck which caused decedent's death, and preserving to

claimant her rights under said law, agreeing to release the employer and its insurer from liability in case the amount recovered was greater than the amount payable under the law, was not an accord and satisfaction; there having been no payment or tender of money.

4. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—ELECTION OF REMEDY.

Where plaintiff's husband was killed by a collision with a motor truck while in the course of his employment, and she brought suit against the owner of the truck, such suit amounted to an election under the workmen's compensation law, and defendant could not again be subjected to a suit at the instance of the employer or insurance company. Act No. 10, pt. 3, § 15, Extra Session 1912.

5. SAME—AGREEMENTS BETWEEN EMPLOYER AND EMPLOYEE—VALIDITY.

All agreements with reference to compensation arising from accidental injuries under the workmen's compensation law are under the direct supervision of the State and they must be filed with, and be approved by, the industrial accident board, and such approval may not be given unless the terms conform to the provisions of the act, and the contract is not final and binding upon the parties until filed and approved.

6. CONTRACTS—PUBLIC POLICY—STATUTES.

A contract is void if it contemplates acts that are illegal or contrary to public policy, and a contract which, in its execution, contravenes the policy and spirit of a statute is equally void as if made against its positive provisions.

7. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—AGREEMENT TO RELEASE EMPLOYER AND INSURER—VALIDITY.

An agreement between the beneficiary of a deceased employee releasing the employer and its insurer from liability under the workmen's compensation law, not approved by the industrial accident board as provided in said act, if not void *ab initio* because opposed to public policy and the express provisions of the statute, became so when suit, in accordance with the agreement, was instituted against the owner of the truck causing decedent's death.

Error to Wayne; Mandell, J.   Submitted January 10, 1917.   (Docket No. 69.)   Decided March 29, 1917.

Case by Mary Dettloff, administratrix of the estate of Joseph Dettloff, deceased, against Hammond, Standish & Company for the unlawful killing of plaintiff's intestate. Judgment for plaintiff. Defendant brings error. Affirmed.

*Keena, Lightner, Oxtoby & Hanley,* for appellant.

*Bishop & Kilpatrick,* for appellee.

Stone, J. Action on the case by plaintiff as administratrix of the estate of her husband, Joseph Dettloff, for damages, under the "death act," arising out of his death caused by the defendant. On the 7th of July, 1914, plaintiff's decedent was driving a milk wagon for the Detroit Creamery Company, at a salary of $21 a week. A motor truck belonging to the defendant, and driven by one of its employees, collided with the wagon which Dettloff was driving, capsizing the wagon upon him, and killing him instantly. On July 30, 1914, the plaintiff made some inquiry in writing of the industrial accident board. On August 3d, the board, by its secretary, answered this inquiry, and inclosed in the letter duplicate blanks for the use of claimant in giving notice under the workmen's compensation act, so-called. Nothing further was done in this matter by the plaintiff. She never made out or filed with the Detroit Creamery Company any claim for compensation under the act, and never received any compensation or sum of money from it, and never received any money from the Massachusetts Bonding & Insurance Company, hereinafter mentioned, and the said blank claims were never made out or filed with the industrial accident board. On October 14, 1914, the plaintiff was duly appointed administratrix of the estate of her deceased husband, and in November, 1914, the exact day not appearing, she executed, acting both as administratrix of her husband's estate and

on her own behalf, a written agreement, to which was attached a supplementary undertaking on her part in the form of a letter, dated December 11, 1914. These instruments were as follows:

"Memorandum of agreement made and entered into this —— day of November, A. D. 1914, by and between Mary Dettloff, of the city of Detroit, Wayne county, Michigan, in her individual capacity and also as administratrix of the estate of Joseph Dettloff, deceased, party of the first part, and the Detroit Creamery Company, a Michigan corporation, and the Massachusetts Bonding & Insurance Company, parties of the second part, and M. H. Bishop and A. W. Kilpatrick, copartners doing business under the firm name of Bishop & Kilpatrick, parties of the third part, witnesseth:

"Whereas, Joseph Dettloff, the former husband of the party of the first part was employed by the Detroit Creamery Company, one of the parties of the second part, for some time prior to July 7th, 1914, as a driver and route foreman at a salary of $21.00 per week, and whereas, on said July 7th, 1914, said Joseph Dettloff while working for said Detroit Creamery Company, in the course of his employment was injured by reason of a collision between the wagon driven by him for said Detroit Creamery Company and a motor vehicle or motor truck owned and operated by the Hammond-Standish Company at the corner of St. Antoine and Winder streets in the city of Detroit, the said injuries causing the death of said Joseph Dettloff; and whereas, the said Joseph Dettloff left surviving Mary Dettloff, his wife, party of the first part, and Evelyn Dettloff, his daughter aged two years, and John Dettloff, a son aged six months, the sole and only heirs at law of said Joseph Dettloff, and dependents of said Joseph Dettloff within the terms and provisions of Act No. 10 of the Public Acts, Extra Session, of 1912, of the State of Michigan, commonly known as the workmen's compensation law; and whereas, the aforesaid dependents are entitled to compensation from the parties of the second part under the terms and provisions of the said workmen's compensation law; and whereas, it is the belief of the

parties hereto that under the common law and the laws of this State, the administratrix or personal representative of said Joseph Dettloff is entitled to maintain suit and recover damages from said Hammond-Standish Company for the benefit of the persons entitled thereto under the law, because of the negligent killing of said Joseph Dettloff, and it is contemplated and intended by the parties hereto that a proper action will be instituted against said Hammond-Standish Company for the purpose of recovering the aforesaid damages; and whereas, it is the express intention and desire of the parties hereto to have such suit instituted and prosecuted without prejudice or injury to and without waiving the rights and benefits accruing to the aforesaid dependents from said second parties under and by virtue of the aforesaid workmen's compensation law, but to have the rights and benefits provided in said workmen's compensation law and accruing to said dependents under the provisions of said workmen's compensation law, fully preserved, protected and assured; and whereas, the said parties of the third part represent and are attorneys for said party of the first part, and propose to institute proceedings against Hammond-Standish Company on behalf of said first party; and whereas, because of the financial condition of said first party, said third parties have advanced her certain sums of money for the support of herself and the other dependents and propose to continue so to do from time to time as the condition of said dependents may require such financial assistance:

"Now, therefore, it is hereby mutually agreed by and between the parties hereto, as follows:

"*First.* The party of the first part, as the administratrix or personal representative, as the case may be, of said Joseph Dettloff, deceased, or her successor, may institute and prosecute such action as may be necessary or desirable against the Hammond-Standish Company to recover damages for the negligent killing of said Joseph Dettloff.

"*Second.* If the actual amount of money received by the plaintiff in such suit from said Hammond-Standish Company either by settlement, compromise or judgment, shall exceed the amount due and payable by said second parties to the aforesaid dependents

under said workmen's compensation law, then, and in that event, said dependents shall have no claim against said second parties for compensation as aforesaid, and said second parties shall be released and discharged from any and all claims, demands and liability by reason of the death of said Joseph Dettloff so employed by said Detroit Creamery Company.

"*Third.* If the amount received by said plaintiff from said Hammond-Standish Company, either by suit, settlement, compromise or judgment, shall be less than the amount of compensation due and payable to said dependents by said second parties under the provisions of said workmen's compensation law, then, and in that event, said second parties promise and agree to pay to said third parties for the use of said dependents and said first party the difference between the amount so received from said Hammond-Standish Company, and the amount due said dependents under said workmen's compensation law.  And it is further understood and agreed by and between the parties hereto that on payment to said third parties for the use of said first party and dependents of the amount of compensation as aforesaid, that said third parties shall be entitled to deduct from the amount of compensation thus received and the amount recovered from said Hammond-Standish Company any and all sums which have been or may hereafter be advanced by said third parties to said first party for the support of said dependents and said third parties after deducting the amount of said advancement, do promise and agree to pay the balance of the amount received to said dependents.

"*Fourth.* If said plaintiff fails to recover anything from said Hammond-Standish Company, either by suit, settlement, compromise or judgment, then, and in that event, said second parties promise and agree to obey and comply with all the provisions of said workmen's compensation law requiring the payment of compensation to said dependents and said second parties agree to pay such compensation according to the provisions of said act to those entitled thereto, and in the time and manner therein specified, said compensation to date back to the time of the death of said Joseph Dettloff, and such back payment to be made in a lump sum. And it is further understood and agreed, and the said

first party hereby consents that said second parties, in the event that said plaintiff fails to recover anything from said Hammond-Standish Company, shall pay to said third parties the amount of said compensation due as aforesaid and said third parties are hereby authorized to deduct from the amount of such compensation by them received any and all sums which have been or may hereafter be advanced by said third parties to said first party for the support of said dependents, and said third parties after deducting the amount of said advancements, do promise and agree to pay the balance of the amount of compensation so received to said dependents.

"*Fifth.* Said first party may at any time desired by her serve notice upon said second parties and present her claim for compensation under the workmen's compensation law.

"5A. It is understood and agreed that no compromise or settlement of said action against Hammond-Standish Company shall be made by the party of the first part without the consent of the Massachusetts Bonding & Insurance Company.

"And it is further understood that nothing shall be done by the said party of the first part which shall in any manner interfere with or deprive said Massachusetts Bonding & Insurance Company of its rights under section 15 of part III of the workmen's compensation act, and in the event that said action is discontinued by the said party of the first part, and the Massachusetts Bonding & Insurance Company shall pay to her the compensation mentioned herein, the said bonding company shall have the right to institute a suit against the said Hammond-Standish Company, under the provisions of said act, to recover the said sum or sums of money thus paid and to be paid to the said party of the first part, and the said party of the first part shall give any and all reasonable aid to the said bonding company in the prosecution of said action that she may be called upon to give.

"*Sixth.* It is further expressly agreed by and between the parties hereto that all notices and claims of whatsoever character or nature required to be served or given said second parties, or any other persons, are hereby expressly waived as well as the time, place

and manner of the giving and serving of said notices or claims, it being the express intention of the parties hereto not to take advantage of or insist upon compliance with or performance of the terms and provisions of said workmen's compensation law with reference to any notice, claim, act or demand upon the part of said dependents, and the rights of said dependents shall in no manner be affected or jeopardized by the failure or neglect to serve the aforesaid notices, claims, or demands as provided in said act."

This agreement was signed by all of the parties thereto.

"Ex. 9 (E. H. C.)

"DETROIT, MICH., Dec. 11th, 1914.

"DETROIT CREAMERY COMPANY,

"Detroit, Michigan.

"*Gentlemen:*

"In view of the fact that the Massachusetts Bonding & Insurance Company has heretofore undertaken to indemnify and save you harmless from any liability on account of the death of Joseph Dettloff, one of your employees, and the further fact that considerable time will elapse before the conclusion and termination of the suit proposed to be brought against the Hammond-Standish Company as provided in the contract this day entered into between the undersigned Mary Dettloff in her individual capacity, and also as administratrix of the estate of Joseph Dettloff, deceased, as party of the first part, and the Detroit Creamery Company, a Michigan Corporation, and the Massachusetts Bonding & Insurance Company as parties of the second part, and Bishop & Kilpatrick as parties of the third part, we beg to advise you that we are willing and do hereby agree as follows, to wit: If the said Massachusetts Bonding & Insurance Company, because of its financial liability, shall default in its said obligation of indemnity to you, the said Detroit Creamery, or fail, refuse or neglect because of its financial inability to pay the compensation to the dependents of said Joseph Dettloff as provided by law and as contracted in the aforesaid agreement, then and in such event you, the said Detroit Creamery Company, shall not be liable to pay such compensation. This shall constitute a sup-

plemental agreement to the agreement aforesaid referred to.

"Yours very truly,
[Signed] "Mary Dettloff,
"Administratrix of Estate of
"Joseph Dettloff, Deceased.
"Mary Dettloff.
"Bishop & Kilpatrick."

Neither of these instruments was ever filed with, or approved by, the industrial accident board.

This action was begun by summons issued January 8, 1915, in pursuance with the contract made between the parties aforesaid. The declaration was filed January 19, 1915. On February 23, 1915, the industrial accident board wrote the plaintiff, stating that they had not received an answer to their previous letter to her, and inquiring her attitude in the matter. She did not reply to this letter. The issue in the case came on for trial on April 14, 1916, and resulted in a verdict and judgment for the plaintiff in the sum of $10,000. To review this judgment the case is brought to this court by writ of error, by defendant. Counsel for appellant state in their brief that the record presents a single question of law, namely: Can the plaintiff maintain this action in view of the agreement above set forth? It is said that all other questions raised upon the trial were waived when the bill of exceptions was settled, and in the assignments of error the only exceptions referred to are those relating to this one question.

The said agreement was offered in evidence by counsel for appellant, and was excluded by the court upon objection of plaintiff's counsel that it was immaterial and irrelevant, to which ruling defendant's counsel duly excepted. We do not understand that there is any question here upon the pleadings. Section 15, pt. 3, of the act in question (2 Comp. Laws 1915, § 5468) reads as follows:

"Where the injury for which compensation is pay-able under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person."

As we understand the claims of appellant, they are as follows:

(1) At the common law an agreement similar to the one above set forth would be a complete satisfaction of plaintiff's claim.

(2) Under the Michigan workmen's compensation law, the claimant has an election of remedies, and he may choose either, but not both. He loses one when he elects the other, and certainly one satisfaction ends his rights against both parties.

(3) The agreement in question evidences an election of remedies by the claimant; also it evidences a satisfaction of her claim.

1. In support of the first proposition counsel urges that the common-law doctrine that a person can have but one satisfaction, no matter how many claims he may have arising out of the same matter, was early applied in this country to actions against joint tort-feasors, and they cite *Brown* v. *City of Cambridge,* 3 Allen (Mass.), 474, and quote from page 476; also *Leddy* v. *Barney,* 139 Mass. 394 (2 N. E. 107) ; *Chapin* v. *Railroad Co.,* 18 Ill. App. 47; *McBride* v. *Scott,* 132 Mich. 176 (93 N. W. 243, 61 L. R. A. 445, 102 Am. St. Rep. 416, 1 Am. & Eng. Ann. Cas. 61).

2. In support of the second proposition, appellant's counsel quote section 15 of our statute, and call attention to *Grand Rapids Lumber Co.* v. *Blair,* 190 Mich. 518 (157 N. W. 29), in which case we found that said

section 15 is identical in substance, and apparently copied almost verbatim from section 6 of the English workmen's compensation act of 1897, and it is said that the same can be said of the Massachusetts statute. Counsel cite English cases as follows: *Edwards* v. *Godfrey*, 2 Q. B. (1899) 333. The headnote of this case is quoted as follows:

"Where a workman who has been injured by an accident arising out of and in the course of his employment brings an unsuccessful action to recover damages against his employer, and is desirous of having compensation for his injury assessed under workmen's compensation act 1897, he must follow the procedure prescribed by section 1, subsec. 4, of that act, and must apply then and there to the judge trying the action for an assessment of compensation; he cannot at a subsequent date initiate independent proceedings against his employer by a request for arbitration under that act."

See, also, *Thompson & Sons* v. *Marine Engineering Co., Ltd.,* 1 K. B. (1903) 428.

Counsel lay much stress upon this *Thompson Case,* and we quote from the brief as follows:

"This was an action by an employer to be indemnified by the third party for payments made to plaintiff's employee under the act of 1897. The record showed that the injured employee gave notice of the accident, and without further proceedings, as provided by the statute, and the rules adopted in 1898 applicable thereto, the employer (being the plaintiff in this case) entered into an agreement with its employee, providing for the payment of compensation, and later did pay the same, and it was for these moneys that this action was brought against the defendant, which the plaintiff claimed was legally liable for the accident and damages resulting therefrom. By its verdict the jury found that the defendant was negligent, and the opinion of the court is given upon a consideration of the same questions which we have in this case, arising under section 6 of the English compensation act of 1897. * * * After stating the facts above

referred to, from which it appeared that no award was made in pursuance with the act, the position of the defendant is stated, namely, that the employer 'can only be reimbursed for any compensation paid in "proceedings" taken against them by the workman, and that no "proceedings" have taken place here.' Evidently an ingenious argument was made on behalf of the defendants, to the effect that a voluntary settlement was not within the language of the statute. The court takes up this question, and in the course of its opinion cites some previous decisions of the English courts, and he concludes from the whole purpose and language of the compensation law that voluntary action between the employer and the workman was, within the meaning of this section, a 'proceeding' under the act."

Counsel also cite *Cribb* v. *Kynoch, Ltd.*, 2 K. B. (1908) 551, 1 B. W. C. C. 43; *Page* v. *Burtwell*, 2 K. B. (1908) 758, 1 B. W. C. C. 267. In the *Page Case*, a workman arranged with a company on whose premises he was injured, but who were not his employers, that in consideration that he made no legal claim against them they would pay his wages, less such part as he might be entitled to recover from his employer or the head contractor, during incapacity, and his doctor's bill, for a period not exceeding six months. The workman subsequently claimed compensation under the act from his employer. It was held that the claim would not lie, the workman having already "recovered" damages against the company; that the word "recover" used in section 6 did not necessarily mean obtained by legal proceedings. In this case the difference between the 1906 statute and that of 1897 is pointed out, namely, that the statute of 1906 left the injured employee with both claims until he secured satisfaction.

*Woodcock* v. *Railway Co.*, 3 K. B. (1913) 139. In the last-cited case the plaintiff, while working for a colliery company, which had come under the 1906 compensation law, was injured, and thereafter made

a claim for compensation against his employer, and received from that company payment for some 34 weeks, under a voluntary arrangement with his employer. Thereafter the employee brought this action at common law against the railroad company, claiming that his injuries resulted under circumstances creating a legal liability within the meaning of the statute. The court said:

"In these circumstances it was very properly only faintly contended on behalf of the plaintiff that he had not recovered compensation, because, as the authorities stand, if a man puts forward a claim for compensation, or takes payments as compensation, knowing that they are compensation, he 'recovers' compensation within the meaning of Workmen's Compensation Act, 1906, although no resistance is offered to the claim when it is made, and therefore no adverse or hostile step to recover compensation has been taken."

*Mahomed* v. *Maunsell,* 1 B. W. C. C. 269, is also cited by appellant's counsel, claiming that the Massachusetts compensation act of 1911 is in substance the same as the English act of 1897 and the Michigan statute. Counsel cite *Barry* v. *Street Railway Co.,* 222 Mass. 366 (110 N. E. 1031). That case holds that where, in an action against a street railway company for personal injuries received by the driver of a team which was run into by a street car of the defendant, the defendant alleges and proves that the plaintiff was subject to the provisions of the workmen's compensation act, and had made with the company insuring his employer an agreement in regard to compensation, which had been approved by the industrial accident board, and had received full payment as provided by the agreement, the plaintiff, in order to show that he was not precluded from prosecuting his action by the provisions of the statute to the effect that under such

circumstances he could not both receive compensation under the act from his employer and also proceed at law against the defendant may show that, although the agreement was approved by the board, was signed by him, his signature was procured by false representations; that it was void and was not an election, so that the board had no jurisdiction to approve it. It was held, however, under the facts in that case, he having received all payments in accordance with the agreement and signed each week a receipt stating that the payment was made subject to the workmen's compensation act, and a final receipt which stated that it was in settlement of compensation under the act "for all injuries" received by him in the collision, the plaintiff was estopped to deny the validity of such agreement and settlement. In the course of its opinion the court said:

"The plaintiff and the insurer signed and filed with the board * * * a memorandum of the agreement in question. * * * If he had expressly stated or made known to the insurer that the agreement and receipts were given 'without prejudice,' as was found to be the fact in *Oliver* v. *Nautilus Steam Shipping Co.* [1903], 2 K. B. 639, upon which he places much reliance, the insurer would have paid with notice that the employee claimed and understood the right of election had been reserved. The right, however, under our statute is exercised when with the approval of the board a settlement is made and compensation thereunder is received during disability."

3. In support of appellant's third proposition it is urged that the agreement had precisely the effect of a money payment; that it evidences an "election" on the part of the plaintiff within the meaning of the statute, and that the doctrine of accord and satisfaction applies, citing *Strobridge Lithographing Co.* v. *Randall*, 78 Mich. 195 (44 N. W. 134). It is said that:

"To permit an injured person to come to the agree-

ment shown in this record with his employer and its insurance company, which will give the employee all that he would get if he strictly followed his rights under the compensation law, and at the same time preserve to him his right to sue at common law a third party, would be indorsing. a palpable evasion of the statute, and it would result, not only in the evils referred to in some of the opinions of the courts, when applying the doctrine of satisfaction in the case of joint tortfeasors, but the evils would be aggravated, because there would then be a race between the insurance company which indemnified the employer, and the insurance company perhaps which indemnified the third party, and between the two competitors even the injured employee would, as a rule, suffer."

On the other hand, it is said by plaintiff's counsel that it has been the policy of the law, since the passage of the death act, to permit one situated as is this plaintiff to recover against a wrongdoer; that since the enactment of the compensation act the wrongdoer must still respond, but there is therein provided an innovation which permits the employer, or insurance company carrying the risk, to prosecute the action, where they have paid the compensation under the act to the dependents; that this defendant, a wrongdoer, is liable in any event. Under the one situation the liability runs to the personal representative, the plaintiff in this case; and under the other condition the liability runs to the employer, or insurance company. It is said that the agreement of the plaintiff in the contract to institute this suit, followed by its actual prosecution, constitutes an election on her part to be content with damages from this defendant, and she has been particularly careful not to resort to the machinery provided in the act for the securing of compensation, and not to demand or receive such compensation, and that the uniform purpose of workmen's compensation acts, under the facts as they appear in this record, is to make the negligent third party ultimately liable for

the damages caused by its wrongful act, citing *Lester* v. *Elevator Co.*, 90 Misc. Rep. 649 (153 N. Y. Supp. 1058) ; *Id.*, 169 App. Div. 613 (155 N. Y. Supp. 524) ; *McGarvey* v. *Oil & Grease Co.*, 156 Wis. 580 (146 N. W. 895), and other cases.

Referring to the first proposition of appellant, counsel for plaintiff take the position, and in this we agree with them, that the doctrine of *McBride* v. *Scott*, *supra*, relating to joint tortfeasors, does not apply here. That rule is inapplicable to the facts appearing in this record, for in no sense can it be claimed that the Detroit Creamery Company and this defendant are joint tortfeasors. Defendant's liability rests solely upon its tort, and upon this record it was alone negligent.

On the other hand, the liability of the creamery company, by virtue of the workmen's compensation act, rests solely upon contract. As was said in *Lavin* v. *Wells Bros. Co.*, 272 Ill. 609 (112 N. E. 271) :

"The liability is a contract liability not different in its nature from any other liability arising out of contract."

Neither do we agree with counsel for appellant that the doctrine of accord and satisfaction applies here. *Henderson* v. *McRae*, 148 Mich. 324 (111 N. W. 1057). There has been no payment or tender of money. *Ogilvie* v. *Hallam*, 58 Iowa, 714 (12 N. W. 730).

In discussing the second proposition of appellant, counsel for plaintiff discuss the *Thompson Case*, and call attention to the fact that the court reserved its decision on the question of election, but was obliged to hold there had been a "proceeding" under that section of the act in view of the fact that:

(1) The employee gave notice to the employer of the accident.

(2) The employee claimed compensation from the employer.

(3) An agreement was entered into between employer and employee.

(4) The agreement was filed in the way provided in the act.

(5) Compensation was paid under the agreement.

In the instant case, none of the foregoing steps was taken except that an agreement was entered into. It is urged that the court in the *Thompson Case* would have encountered great difficulty in arriving at the decision it did if no compensation had been paid and facts 1, 2, and 4 had not existed; and attention is called to the facts that in the instant case the employee has given no notice, and made no claim upon the employer for compensation, and the agreement was not filed and approved as required by the act (resulting in the contract not being final and binding upon the parties), and no compensation has been paid.

Counsel for plaintiff discuss the English cases cited by appellant and point out the difference in the facts between them and the instant case. Attention is called to the fact that the opinion of Mr. Justice Jelf in *Oliver* v. *Nautilus Steam Shipping Co., supra,* was relied upon by the court in the *Thompson Case,* and that the *Oliver Case* was subsequently reversed and a contrary conclusion arrived at. 19 T. L. R. 607. That was a case in which plaintiff was injured by the act of a third party, who was the defendant. The plaintiff wrote his employers, and the insurance company paid plaintiff various sums of money for which receipts were given, and the payments were accepted by plaintiff "without prejudice." It is true, as suggested by counsel for appellant in their reply brief, that the case was reversed on the facts. In that case, Lord Justice Romer said, among other things:

"Now under section 6 it could not be said that the workman ought necessarily to be held to have exercised the option thereby given to him merely because

he had taken some 'proceeding.' Whether the 'proceeding' would, on the facts, be such as to bind the workman must depend upon the circumstances of each particular case, including a consideration of what would result from the 'proceeding,' and whether or not any injury would result from the proceeding, or from holding that it did not irrevocably bind the workman. * * * His Lordship thought that a proceeding would not be held irrevocably to bind the workman unless the proceeding did result in some compensation being paid to and received by the workman, and under circumstances sufficient to bind the workman."

Some of the English cases cited by counsel for plaintiff arose under the amendment of 1906, and hence are not in point. The *Barry Case* is clearly distinguished from the instant case, and it cannot be said that any of the English cases cited by counsel for appellant is on "all fours" with the instant case, but some of them are somewhat analogous in principle.

It is a fair question whether the agreement here may not have been "without prejudice," and ruled by the *Oliver Case*. The contract in the instant case in no sense injured the defendant. Its liability remained unchanged. The bringing of this suit was, under the act, clearly an election. That right to sue has not been taken away by the compensation act. This defendant cannot again be subjected to a suit at the instance of the employer, or the insurance company.

Finally, it is urged by plaintiff that the agreement is not binding and is void:

(1) Because made upon a contingency and condition.
(2) Because it was not filed with, and approved by, the board.

Under the first point we are referred to *Carpenter* v. *Forging Co.*, 191 Mich. 45 (157 N. W. 374), where we said, referring to the agreement under the act:

"In our opinion the statute contemplates an agree-

ment and settlement made without contingency or condition, and not one based upon a possible or probable event that may render it inoperative. An agreement and settlement, based on the strength of such a condition or contingency, is not such as the statute contemplates."

Upon the second point it is urged that the State through its officials, the industrial accident board, is intrusted with the enforcement of the provisions of the act, and the spirit, as well as the letter of the law, prohibits the employer and employee from frittering away its salutary provisions; that this is evidenced by the fact that while the act countenances and encourages agreements between the employer and employee with reference to compensation arising from accidental injuries, yet all such agreements are under the direct supervision of the State, and they must be filed with, and be approved by, the board, and that such approval may not be given unless the terms conform to the provisions of the act, and the contract is not final and binding upon the parties until filed with, and approved by, the board. We think this position well taken. The interest which the State has in these matters is well expressed by the Ohio Industrial Commission in *Rosensteel* v. *Forge & Manfg. Co.,* 7 N. C. C. A. 798. See, also, the language of the Illinois Industrial Board in *Fitt* v. *Public Service Co.,* 7 N. C. C. A. 800, note.

Part 2, § 20, of the Michigan act reads:

"No agreement by an employee to waive his rights to compensation under this act shall be valid."

We have been unable to find any similar provision in the English act. On the contrary, in *Ryan* v. *Hartley,* 5 B. W. C. C. 407, it was held that there was nothing in that act to prevent an adult workman, before entering a claim, and before any weekly payment had been made, from coming to an arrangement by way

of compromise with his employer to accept a sum of money in satisfaction of his claims; and no registration of such agreement is .required. A reference to the Michigan act will mark the difference between the two acts. This court has frequently called attention to these provisions. *Foley* v. *Railway*, 190 Mich. 507 (157 N. W. 45); *Estate of Beckwith* v. *Spooner*, 183 Mich. 323 (149 N. W. 971, Am. & Eng. Ann. Cas. 1916E, 886). If counsel for appellant are correct in their claim as to the legality of the agreement set forth, it must follow that the industrial accident board would not have approved it, because it did not comply with the act.

A contract is void if it contemplates acts that are illegal or contrary to public policy. *Drake* v. *Lauer*, 182 N. Y. 533 (93 App. Div. 86, 75 N. E. 1129). A contract which in its execution contravenes the policy and spirit of a statute is equally void as if made against its positive provisions. *Hunt* v. *Knickerbacker*, 5 Johns. (N. Y.) 327; *Wetmore* v. *Brien*, 3 Head (40 Tenn.), 723.

We are impressed with the claim that the agreement in question was void *ab initio*, because opposed to public policy and express statute. If not void in the beginning, it became so when this suit was instituted, and therefore was immaterial and irrelevant to the issue upon the trial. Counsel for appellant have expressed some concern as to what will become of the judgment in excess of $3,000. We hardly think counsel are serious in this claim. This plaintiff is the personal representative of the estate of the deceased, and is authorized to bring this suit (sections 10427, 10428, 3 Comp. Laws [3 Comp. Laws 1915, §§ 14577, 14578]) and the money recovered under the judgment goes to her to be disposed of as the statute directs.

We find no error in the record, and the judgment below is affirmed.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and Brooke, JJ., concurred with STONE, J.

FELLOWS, J.  I concur in the affirmance of this judgment on the ground of the invalidity of the contract.  If it could be said that the contract is valid and enforceable, it amounts to an election to proceed against the employer for compensation under section 15, pt. 3 of the act in question. (2 Comp. Laws 1915, § 5468).  Under section 6 of the contract, all notices and claims required by the act are waived.  This is tantamount to giving the notices and filing the claims required by its terms.  *Estate of Beckwith* v. *Spooner,* 183 Mich. 323 (149 N. W. 971, Am. & Eng. Ann. Cas. 1916E, 886).  If the contract by its terms, and I think it does, secures to the dependents compensation under the act, and waives proceedings thereunder, this is equivalent to actual proceedings before the board and is an election.  But the contract being unenforceable without the approval of the board, it follows that the election is void and unenforceable.