### BRABON *v*. GLADWIN LIGHT & POWER CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—AGREEMENTS—APPROVAL BY BOARD NECESSARY.

   In cases arising under the workmen's compensation act (2 Comp. Laws 1915, § 5423 *et seq.*), the terms of any agreement made by the employer and employee or his dependents, concerning compensation, to be binding, must, under section 5458, be filed with, and approved by, the industrial accident board, which will not approve settlements or agreements therefor not in conformity with the act.

2. SAME—ELECTION OF REMEDIES—ABATEMENT.

   If an employee has the right either to sue his employer or to take compensation under the workmen's compensation act, and he sues and later files a claim under said act, the action at law will abate (2 Comp. Laws 1915, § 5488).

3. SAME—WORKMEN'S COMPENSATION ACT—NEGLIGENCE OF THIRD PERSON—REMEDY OF EMPLOYER—MEASURE OF DAMAGES.

   If an employee is injured by the negligence of a third per-

---

See notes in L. R. A. 1916A, 23; L. R. A. 1917D, 80.

son, he may elect to sue that person or to claim compensation from the employer under the statute (2 Comp. Laws 1915, § 5468); and if'he claims and is paid, such amount becomes the measure of the recovery of his employer against the third person.

4. SAME—WORKMEN'S COMPENSATION ACT—NEGLIGENCE OF THIRD PERSON—ELECTION OF REMEDIES—WHAT CONSTITUTES.

An acceptance by the widow of some compensation for the death of her husband voluntarily paid by the employer and not under an agreement filed with, and approved by, the board, does not constitute a "proceeding" under 2 Comp. Laws 1915, §§ 5468, 5488, so as to preclude an action at law against a third person whose negligence caused his death. FELLOWS, J., dissenting.

5. EVIDENCE—EXPERT WITNESSES—OPINION EVIDENCE—ELECTRICITY —POSSIBLE AND PROBABLE EFFECTS.

In an action under the death act (3 Comp. Laws 1915, §§ 14577, 14578), for death by electrocution, testimony by a witness who had formerly been a lineman for defendant that it would be possible, under certain conditions, for electric current to jump from the primary wires to exposed places on the lighting circuit was admissible, since a subject can not be developed by one question and answer and the witness was further examined and cross-examined and what he actually knew was made plain.

6. ELECTRICITY—DEATH BY ELECTRIC SHOCK—EVIDENCE—SUFFICIENCY.

In an action for death by electric shock, evidence examined, and held, to warrant a finding by the jury that a metal wall was electrified from defendant's wire, and that plaintiff's decedent was electrocuted because thereof; inference from proven facts, and not conjecture, supporting the finding of the jury.

7. SAME—INSTRUCTIONS—INSTANTANEOUS DEATH.

In such action an instruction that death was instantaneous was proper, since the death was caused by an electric shock and whether or not one or more minutes elapsed before life was extinct is not material.

Error to Gladwin; Sharpe, J. Submitted April 3, 1918. (Docket No. 18.) Decided June 3, 1918.

Case by Alma Brabon, administratrix of the estate

of Jacob Lehman, deceased, against the Gladwin Light & Power Company for the negligent killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Affirmed.

*Vandeveer & Foster*, for appellant.

*J. C. Shaffer, John Prindle*, and *Hal P. Wilson*, for appellee.

OSTRANDER, C. J. Plaintiff's decedent, Jacob Lehman, was a carpenter, but sometimes did other work. He was killed while in the employ of E. A. McGeorge & Son, who own and operate an elevator at Gladwin, Michigan, who had elected to come under the workmen's compensation act, whose insurer was the Fidelity & Deposit Company. Although little testimony upon the subject was elicited, it seems to be conceded that Lehman was making some repairs about the place, working as a carpenter. In the morning of August 12, 1915, he was found standing, in contact with the metal siding of the elevator building, dead. Surviving him are his widow and three minor children. His widow, since remarried, is administratrix of his estate, and, assuming that the death of her husband was caused by a current of electricity and that the defendant, whose wires entered the elevator and who furnished the owners electric energy for power and lighting, was negligently responsible for charging the metal siding of the building with electricity, she brought this suit against it under the death act, filing her declaration in August, 1916. With the plea defendant gave notice that it would prove that after Lehman's death the plaintiff "accepted and received benefits as provided for by said workmen's compensation act," by reason of which she is barred from maintaining this action. Upon the trial the jury returned a verdict for plaintiff for $3,-300, upon which judgment was entered. Various ex-

ceptions were taken at the trial, upon some of which assignments of error, nine in number, are based, those relied upon in the brief being (1) a refusal to strike out certain testimony, (2) refusal of the court to direct a verdict for defendant when plaintiff had rested, (3) refusal to direct a verdict for defendant at the close of the testimony, (4) a statement made by the court in the charge, "The death, there is no question about, was instantaneous," and "This man was instantly killed," (5) an erroneous instruction concerning the measure of damages, (6) the instruction,

"I do say to you as a matter of law  *  *  *  that there was not such an agreement made by the widow relative to the compensation as precludes her from bringing this suit."

1. The contention of appellant that this plaintiff can not maintain this action is first considered. Sections 5468 and 5488, 2 Comp. Laws 1915, read as follows:

"(5468) SEC. 15. Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages, or against the employer for compensation under this act, but not against both, and if compensation be paid under this act the employer may enforce for his benefit or for that of the insurance company carrying such risk, or the commissioner of insurance, as the case may be, the liability of such other person."

"(5488) SECTION 1. If the employee, or his dependents, in case of his death, of any employer subject to the provisions of this act files any claim with, or accepts any payment from such employer, or any insurance company carrying such risks, or from the commissioner of insurance on account of personal injury, or makes any agreement, or submits any question to arbitration under this act, such action shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury."

The testimony discloses that the employer and the Fidelity & Deposit Company, before this suit was begun, paid the widow of Lehman, the plaintiff here, sums of money. The exact amount is not made certain, but it seems to have been at least $129 or $130. The widow was advised about her rights and she understood that she could either accept payments of $7.21 a week or she could sue the defendant here, as she has done. Plaintiff gave testimony as follows:

"*Q*. Isn't there an agreement between you and the insurance company that you can claim your compensation at any time that you desire to do so?·

"*A*. No, no agreement.

"*Q*. There is not? (No response.)

"*Q*. And before determining whether or not you will claim that compensation you are waiting the outcome of this lawsuit are you not?

"*A*. Yes, sir.

"*Q*. And that is the understanding that you have with the attorneys in this case?

"*A*. Yes, sir. * * *

"*Q*. Well, there is an agreement that if this case fails that you shall then continue to get your compensation, that is true, isn't it, Mrs. Brabon?

"*A*. I think so.

"*Q*. Well, you had a talk and you know that if you don't get any money in this case then your understanding and your agreement is that you are to get your compensation?

"*A*. Do you mean so much a week?

"*Q*. Yes, for the death of your husband.

"*A*. For how long?

"*Q*. Well, for the 300 weeks, for the balance of the 300 weeks.

"*A*. I don't know. * * *

"*Q*. You are now awaiting the outcome of this case to determine as to whether or not you will accept additional compensation, are you not, Mrs. Brabon? * * *

"*A*. Why, of course I am waiting to see the outcome of this—

"*Q*. Waiting for what, Mrs. Brabon?

"*A.* I am waiting for this—

"*The Court:* 'To see the outcome of this' is the way she answered.

"*Q.* Yes, and if you don't recover in this case, it is the understanding and the agreement between the parties that you are then to receive your compensation, is it not? * * *

"*A.* Well, I haven't agreed to nothing like that. * * * I have not entered into a contract with my attorney as to what percentage he shall obtain as fee in event of a recovery in this case * * * I did not sign an agreement regarding compensation in this case."

It does not clearly appear that any formal claim for compensation was made by the widow to the employer, and it does not appear that any agreement about compensation was made or that any document or agreement about it was filed with the industrial accident board. There is some testimony to the effect that she was offered money by the employer and urged to accept it but, for a time at least, refused it. It is, however, a reasonable, if not a necessary, inference from the testimony that the widow understood that the sums paid to her were not mere advances, or charitable gifts, but were paid to her on account of an admitted right which she had to look to the employer for compensation.

The employer wrote two letters which indicate its attitude in the premises, one dated October 7, 1915, the other the next day, which are here set out:

"Mr. A. J. SPALDING, Adjuster

"Fidelity & Deposit Company of Baltimore, Maryland,

"Detroit, Michigan.

"*Dear Sir:* Regarding the case of Jacob Lehman, the widow came to our office Wednesday, October 6th, and asked if I could let her have some money. I let her have a check for $7.21 which is the amount you advised we should advance. This is the first time that she has asked for or accepted money from us since the accident and we would like to know if you people can-

not arrange to send her the correct amount weekly from now on.

"Kindly let us have a prompt reply."

"Mr. A. J. SPALDING,

"Detroit, Michigan.

"*Dear Sir:* We learned today in a round-about way that Mrs. Lehman has decided to accept her compensation as advised you yesterday we advanced her $7.21 on October 6th. You will kindly advise the Fidelity & Deposit Company of Maryland to take care of the weekly payments in the future."

In cases arising under the compensation act, it is the rule that the terms of any agreement made by the employer and employee or his dependent claimants, concerning compensation, to be binding, are subject to the approval of the industrial accident board, which will not approve settlements, or agreements therefor, not in conformity with the act. The agreement is not final and binding until filed with and approved by the said board. If the employee has the right either to sue his employer at law or to take compensation under the statute, and he sues and later files a claim for compensation, the action at law will abate; because by the terms of section 5488, above quoted, in filing his claim he has released to his employer all demands at law. *Gray* v. *Brown & Sehler Co.,* 200 Mich. 177. If the employee is injured by the negligence of a third person, he may elect to sue that person or to claim compensation under the statute (*Grand Rapids Lumber Co.* v. *Blair,* 190 Mich. 518; *Albrecht Co.* v. *Iron Works,* 200 Mich. 109; *Dettloff* v. *Hammond, Standish & Co.,* 195 Mich. 117), and if he claims and is paid compensation, the amount which is paid becomes the measure of the recovery of his employer against the third person. Beyond this, it was intimated in *Grand Rapids Lumber Co.* v. *Blair, supra,* in agreement with *Thompson & Sons* v. *Engineering Co.,* 1 K. B. (1903) 428, *Nettleingham & Co.* v. *Powell & Co.,* 1 K. B.

(1913) 113, that if compensation is voluntarily paid by the employer under an agreement to do so, not formally sufficient to satisfy the statute or bind the employee, the employer may sue the responsible third person for indemnity, having to satisfy the court that the amount claimed was properly·paid by him.

In the instant case, the alleged responsible third person pleads, in effect, that the representative of the employee had *proceeded* against the employer for compensation under the act before bringing this suit, and, as she cannot proceed against both the employer and the defendant, the suit must abate. And this raises the precise question to be determined, namely, did she *proceed* against the employer for compensation, within the meaning of the statute? There is no statute definition of the word proceed. Particulars of conduct which would release to the employer, no third person being responsible, any right of action at law against him, namely, filing any claim, accepting any payment, making any agreement with reference thereto, recited in section 5488, are not repeated in section 5468. In *Dettloff* v. *Hammond, Standish & Co., supra,* the widow and administratrix, before suing the alleged responsible third person, made an agreement with the employer, by the terms of which she was to sue the responsible third person, saving and reserving her right to compensation under the statute. If she received less than she would be entitled to receive under the compensation act, the employer, party to the said agreement, was to pay her the difference. Whether it was a good or bad agreement, in law, it was an agreement with respect to compensation, not submitted to or approved by the industrial accident board. As affecting the construction of the statute and the precise question presented in the instant case, the decision in *Dettloff* v. *Hammond, Standish & Co.* is that the mere making of the agreement was not a proceeding

to obtain compensation under the act. · No money had been demanded from or had been paid by the employer, who therefore had no claim to be indemnified by the wrongdoer. In short, all there was done was held not to evidence an election to proceed against the employer for compensation and to evidence an election to proceed against the responsible third person.

Here, the claimant widow has accepted some compensation from the employer, paid voluntarily, it is true, but under circumstances which, if payments were completed and accepted, would undoubtedly give him a right of action against the responsible wrongdoer for indemnity. Her loss resulting from the injury has been *pro tanto* reduced—satisfied—by the money she has accepted. If she may thus accept compensation for 20 weeks and then sue the wrongdoer, she may accept it for 100 weeks or more and sue the wrongdoer.

These and other considerations point to the conclusion that, within the meaning of the statute, she had proceeded against the employer before bringing this suit, as, in a supposed case, demand upon and settlement with the responsible wrongdoer would be considered to be a proceeding against him. *Mulligan* v. *Dick & Son,* 41 Sc. L. Rep. 77.

On the other hand, we have legislation which requires interpretation and, in the administration of the law, application, in harmony with its general purpose. It both creates a liability and provides a method for enforcing it. To *proceed* under it, against an employer, is to give notice of an injury, make a claim for compensation, secure the judgment and finding of the board upon all points involved, or its approval of any agreement for compensation which the interested persons may enter into. Finally, if it is desired, a judgment may be had, in conformity with the conclusions of the board. Little difficulty·is experienced

where the facts are like those presented by this record, but in a large number of cases, perhaps in a majority of them, the original findings may be controlling for a limited period only, and subject upon certain conditions to revision and amendment. To *proceed* against the employer is to employ the procedure, the method, pointed out in the statute. If the particular provision of the law is interpreted in harmony with this idea and view, questions like the disturbing one now being considered cannot hereafter arise, or, arising, may be disposed of by a certain rule. Tested by such a rule, plaintiff has not proceeded against the employer because she has neither made with him an approved agreement nor has she submitted a demand against him to lawful determination.

It is held, in agreement with the ruling of the learned trial judge, that plaintiff may maintain her suit.

2. The testimony which the court refused on motion to strike out was the answer of a witness to the question,

"In your opinion would it be possible for that primary wire to jump over on those places you have spoken of, those bare places?"

The witness, who had formerly worked as lineman for defendant, answered, "It would be possible under certain conditions." The objection was,

"I object to that and ask that it be stricken out as to what would possibly happen."

The point presented in argument is that negligence of defendant cannot be made to rest upon mere possibilities. But the effect of this testimony was not to prove possible negligence or possible instead of probable conditions. An impossible condition can never be a probable one. A possible condition may or may not be probable. Usually, a subject cannot be developed

by one question and answer, and it was not error for counsel to ask the witness, supposed to have extra knowledge, about certain phenomena and their causes, if it is possible that a certain result, or effect, or condition, may come from stated conditions. If no more was proved, the testimony might be wholly immaterial as affecting the issue of fact presented, depending somewhat upon the degree of care which the law required to be exercised in the premises. This witness was cross-examined and is commended by counsel for appellant for his frankness. Just what he knew and what he guessed at was made plain.

3. Two reasons were given for requesting a directed verdict when plaintiff had rested her case. namely, (1) no actionable negligence had been established, and (2) the cause of the accident rested in speculation, guess, conjecture.

The testimony tended to prove that the person who discovered plaintiff's decedent, dead, received an electric shock when he touched the body. It was not until the current was shut off that he was moved. It tends to prove, further, that there were several large burns on his person, and on the bottoms of his feet a number of holes having the appearance of being made with a hot iron. In the opinion of the medical man called to see him, he was electrocuted. At the point where the wire carrying the current for lighting entered the elevator,

"The metal had been melted and looked as though it had been soldered together. Where the fire went in, a hole had been burned the size of a bowl."

No other wires than defendant's entered the building. Near the building was a transformer, on a pole to which a primary wire carrying 2,300 volts was run and from which the wire for the lighting current ran to the elevator. Normally, this secondary wire carried 110 volts, perhaps 220; the record does not seem

to be quite clear upon this point. Formerly, another than defendant had furnished current for the elevator. A circular loom conduit led through the wall, and through it the wire passed. It was not a porcelain tube, but made of other material. A witness, a former lineman of defendant, testified that

"A circular loom is not supposed to be used on buildings where it is exposed."

The same witness testified that after the injury and after the fire which was set to the elevator building had been put out, he noticed the wires and where current had jumped from the primary wire to the lighting wire which led to the elevator. He testified to certain bare joints and points on the wires—not insulated—and also that there were places where the high tension wire and the lighting wire were separated from each other not farther than three inches. He further testified:

"The wires were supposed to be insulated. At places, a majority of the joints were not soldered, being bare for a distance of an inch or an inch and one-half. This condition, I think, I found immediately after Lehman was dead. More bare joints were found on the transformer pole than in other points. I couldn't say how many there were on the transformer pole, but would say three."

It is unnecessary to further set out testimony. The morning was a rainy one. The jury was warranted in finding that the metal wall was electrified from defendant's wire and that plaintiff's decedent was killed —electrocuted—because thereof. There was evidence of faulty conditions of wiring. It was possible for the greater voltage to reach the secondary wire. No other cause for what occurred is suggested. Indeed, any other cause is eliminated. Inference from proven facts, and not conjecture, supports the finding of the jury.

The motion for a directed verdict, made at the close of the testimony, was based upon reasons already given and then repeated, and upon the further ground that plaintiff had elected to accept compensation under the act. What has been said disposes of the contention.

5. The court was not in error in saying to the jury that death of plaintiff's decedent was instantaneous— that he was instantly killed. For the purposes of the point made, namely, that suit was improperly brought under the death act (3 Comp. Laws 1915, §§ 14577, 14578), there can be no question about the fact. The man was killed by a current of electricity received when he leaned against or touched the metal wall, and whether one or more minutes elapsed before life was extinct is not material. A verdict based upon another conclusion would have properly been set aside by the court.

.No reversible error is pointed out, and the judgment is affirmed, with costs to appellee.

BIRD, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred with OSTRANDER, C. J.

FELLOWS, J. (*dissenting*). I think it would logically follow from the construction of section 15, part 3, of the workmen's compensation law (2 Comp. Laws 1915, § 5468), indulged in by the Chief Justice in this case, that an employee negligently injured by a stranger while in the performance of his master's service could enforce compensation from such master, even though he had secured by an amicable and voluntary settlement full compensation from such stranger for all damage done him by such negligence, because if we follow the construction of the Chief Justice the employee had not "proceeded at law" within the meaning of the section. If this plaintiff received and accepted money as compensation under the act from the

employer or the insurer, and is not held to have elected under the act, because she had not instituted a proceeding by so doing, then an employee may accept by voluntary settlement with the wrongdoer his damages for the tort committed upon him, without having elected under the act, because he has not instituted a proceeding in court to secure such damages. I find no provision of the statute which would authorize either the board or the court in reducing the amount recovered by the amount already received, although equitable considerations would require that to be done. The construction when adopted by this court must be of universal application, and must apply as well where compensation as compensation is accepted without formal action by the employee or dependent as it would where money is received in settlement from the wrongdoer without formal proceedings to enforce the payment of the same. I cannot agree with a construction of this section which by any possibility would reach the result indicated. It is at variance with the spirit and purpose of the act, and, in my judgment, in conflict with its language.

This section of our act is taken almost literally from the English act of 1897 (60 and 61 Vict. chap. 37). In 1903, several years before the passage of our act, the Scottish court had this provision under consideration in the case of *Mulligan* v. *Dick & Son*, 41 Sc. L. Rep. 77. In this case Mulligan was an employee of Dick & Son, contractors for the mason work in the repair and reconstruction of the Grosvenor restaurant in Glasgow; Baird & Son were contractors for the iron and steel work. Mulligan, while so employed, was injured by the fall of a hammer through the negligence of an employee of Baird & Son; they voluntarily settled with him and paid him £17, 2s, and took a receipt which recited that it was "without prejudice" to his claim under the workman's compensation act.

Thereafter he brought proceedings against his employer under the compensation act, and it was urged in his behalf that he had not proceeded against Baird & Son because he had brought no action. Compensation was denied him, the Lord President, in answering the contention of the employee, saying:

"The main argument addressed to us against the judgment of the sheriff-substitute was that in order to this provision applying the words 'proceed at law' involve the institution of some proceeding by action or otherwise, and that inasmuch as there was no such proceeding in this case the alternative stated was not raised, and the provision did not apply. But it appears to me that the words 'proceed at law' are not used in the technical sense of taking proceedings in a court. It seems to me that the meaning conveyed by the word 'proceed' in the act might be more shortly expressed by the word 'go,' and that if the workman goes against one party he has elected to take one of the remedies open to him, and that if he takes his common-law remedy he cannot also claim his statutory remedy. I therefore think that the argument that what was meant by the 6th section was some legal or judicial procedure, and not an extra-judicial settlement of a claim duly made, is not well founded, and that the conclusion at which the sheriff-substitute has arrived is a sound one."

Lord Adam, in agreeing with the Lord President, said:

"In these circumstances, as your Lordship has pointed out, the appellant had two remedies—he could either proceed for damages against the persons who were responsible for the fall of the hammer, that is, against Messrs. Baird, or he could claim compensation from his own employers under the workmen's compensation act. The act did not deprive him of his right to damages if he could make out fault in the person who caused the accident. But here section 6 comes into operation, and provides that he may, in his option, 'proceed either at law against that person to recover damages, or against his employer for compensation

under this act, but not against both.' That is what the act says, and the question here is, Did the workman exercise his option? What happens was that he made a claim against Messrs. Baird for damages, and received payment of £17, 2s, and the question is whether in doing so he exercised his option under the act. I did not understand Mr. Campbell to dispute that this was a proceeding for the recovery of damages, but he maintained that it was not a proceeding of the kind specified in section 6, which would bar a claim against the employers under the act. The argument went the length of maintaining that no matter how large the claim, and no matter how successful it might be in obtaining payment, if it was not in the form of an action at law it was not a proceeding contemplated by the act, because the provision of the act means that nothing but an action at law will bar the claim against the employers. The appellant founds on the words of the act 'proceeding, either at law against that person to recover damages,' and says that the option which the workman must exercise lies between proceedings at law—*i.e.*, an action in court, and proceedings under the workmen's compensation act. I think that construction is quite wrong, and that the act does not mean proceeding at law in that sense. The true construction of the act is that an alternative is given between a claim under the ordinary common-law liability, in contradistinction to proceedings under the act. The statute says that if you take proceedings against the party in fault, that bars you afterwards from proceeding against your employers for compensation. I think that it cannot be disputed here that the appellant did proceed against the party at fault, and therefore exercised the option given to him under the act."

Lord M'Laren also agreeing, said:

"I might also say that I think the word 'proceed' is sufficiently comprehensive to include the recovery of damages by voluntary agreement as well as recovery under a decree."

Lord Kinnear, the other member of the court, said:

"It appears to me that the statute offers a perfectly

clear option to the workman in circumstances like the present. He may either go against the person responsible for the injury, who in the running title of the 6th section is conveniently called the stranger, or he may go against his employer for compensation under the act, but he cannot go against both. Therefore if he has made a claim against the stranger the statute says that he shall have no claim against his employers."

In the case of *Dettloff* v. *Hammond, Standish & Co.*, 195 Mich. 117, the plaintiff had entered into a contract which had not been approved by the board. We held that it contravened the public policy of the State to contract without such approval and that the contract without such approval was void and unenforceable. But in that case the plaintiff had received no compensation, nor had she secured to herself compensation by an enforceable contract. She, therefore, had not elected. In the instant case the testimony tends to show that the plaintiff had been paid, and had received as compensation under the act three weekly payments from the employer (who had been reimbursed by the insurance company), and several other payments from the insurance company. This, in my judgment, was an election under the act; she had "proceeded" against the employer within the contemplation of section 15, part 3 (2 Comp. Laws 1915, § 5468).